**BLUMENTHAL, NORDREHAUG & BHOWMIK**
  Norman B. Blumenthal (State Bar #068687)
norm@bamlawlj.com
  Kyle R. Nordrehaug (State Bar #205975)
kyle@bamlawlj.com
  Aparajit Bhowmik (State Bar #248066)
aj@bamlawlj.com
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**UNITED EMPLOYEES LAW GROUP**
  Walter Haines, Esq. (State Bar #71075)
walter@whaines.com
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006
Attorneys for Class Plaintiffs

*COUNSEL FOR DEFENDANT LISTED ON SECOND PAGE*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE SMITH, an individual, on behalf of herself, and on behalf of all persons similarly situated, | Case No.: 08-cv-02353-LAB-JMA |
| Plaintiff, | **JOINT MOTION FOR LEAVE FOR PLAINTIFF TO FILE A FIRST AMENDED COMPLAINT** |
| vs. | |
| KAISER FOUNDATION HOSPITALS, INC., also d/b/a KAISER PERMANENTE INFORMATION TECHNOLOGY, a California Corporation; and, KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation, and Does 1 to 10, | Judge: Hon. Larry Alan Burns<br><br>Complaint Filed: December 18, 2008<br>Trial Setting: None |
| Defendants. | |

1

JOINT MOTION FOR LEAVE FOR PL TO FILE FAC

1

**SEYFARTH SHAW, LLP**
   Thomas Kaufman (State Bar #177936)
2  tkaufman@seyfarth.com
   2029 Century Park East, Suite 3300
3  Los Angeles, CA 90067
   Telephone: (310) 201-5254
4  Facsimile: (310) 201-5219

5  Attorneys for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR LEAVE FOR PL TO FILE FAC

08-cv-02353-LAB-JMA

**WHEREAS,** Plaintiff Yvette Smith ("Plaintiff") filed suit against Defendants Kaiser Foundation Hospitals, Inc. and Kaiser Foundation Health Plan, Inc. ("Defendants") (collectively referred to herein as the "Parties") on December 18, 2008;

**WHEREAS,** Plaintiff sent notice of Labor Code violations pursuant to the Private Attorney General Act of 2004, Labor Code Section 2699 ("PAGA"), to the Labor and Workforce Development Agency (the "LWDA") on December 22, 2008;

**WHEREAS,** on January 20, 2009, the LWDA informed Plaintiff that the Agency does not intend to investigate the PAGA allegations;

**WHEREAS,** the Parties have agreed that Plaintiff may file the proposed First Amended Complaint, attached hereto as Exhibit #1, which adds the PAGA allegations as a seventh (7th) cause of action and adds Plaintiff Tim Dodson as an additional plaintiff and class representative;

**WHEREAS,** Cal. Labor Code § 2699.3(a)(2)(C) provides that an amendment to add this PAGA civil penalty claim is permitted "as a matter of right;"

**NOW, THEREFORE,** Plaintiff and Defendant, good cause appearing, through their respective counsel of record, stipulate and jointly move for leave for Plaintiff to file the First Amended Complaint, attached hereto as Exhibit #1, as the operative Complaint, to which Defendants shall have thirty (30) days to answer after filing.

Dated:        February 3, 2009    BLUMENTHAL, NORDREHAUG & BHOWMIK

By:  s/Norman B. Blumenthal
     Norman B. Blumenthal
     Attorneys for Plaintiff

Dated:        February 3, 2009    SEYFARTH SHAW LLP

By:  s/
     Thomas R. Kaufman
     Attorneys for Defendants

G:\D\NBB\Smith v. Kaiser\j-motion-FAC.wpd

3

JOINT MOTION FOR LEAVE FOR PL TO FILE FAC

EXHIBIT __/__

**BLUMENTHAL, NORDREHAUG & BHOWMIK**
Norman B. Blumenthal (State Bar #068687)
Kyle R. Nordrehaug (State Bar #205975)
Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**UNITED EMPLOYEES LAW GROUP**
Walter Haines, Esq. (State Bar #71075)
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE SMITH, an individual, TIM DODSON, an individual, on behalf of themselves, and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> KAISER FOUNDATION HOSPITALS, INC., also d/b/a KAISER PERMANENTE INFORMATION TECHNOLOGY, a California Corporation; and, KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation, and Does 1 to 10, <br><br><br> Defendants. | CASE No. 08-cv-02353-LAB-JMA <br><br> **FIRST AMENDED** CLASS AND COLLECTIVE ACTION COMPLAINT <br><br> 1. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*; <br><br> 2. FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF CAL. LAB. CODE §§ 510, 515.5, 551, 552, 1194 AND 1198, *et seq.*; <br><br> 3. FAILURE TO PROVIDE WAGES WHEN DUE IN VIOLATION OF CAL. LAB. CODE § 203; <br><br> 4. FAILURE TO PROVIDE MEAL AND REST PERIODS IN VIOLATION OF CAL. LAB. CODE § 226.7 AND 512; <br><br> 5. FAILURE TO PROVIDE ACCURATE ITEMIZED STATEMENTS IN VIOLATION OF CAL. LAB. CODE § 226; <br><br> 6. FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF 29 U.S.C. § 201, *et seq.*; and, <br><br> 7. LABOR CODE PRIVATE ATTORNEY GENERAL ACT [Labor Code § 2698] <br><br> DEMAND FOR A JURY TRIAL |

---

**FIRST AMENDED** COMPLAINT

1    Plaintiffs Yvette Smith and Tim Dodson, on behalf of themselves, and all others similarly

2 situated (hereinafter referred to as the "PLAINTIFFS") allege on information and belief, except for her

3 own acts and knowledge, the following:

4

5                                    **THE PARTIES**

6    1.    Kaiser Foundation Health Plan, Inc., hereinafter also referred to as

7 "DEFENDANTS," providing services under the Kaiser Permanente name, is the largest

8 not-for-profit HMO in the United States.  Kaiser Foundation Health Plan, Inc. now serves about 8.2

9 million members in 9 states and Washington, D.C.  The Oakland, California-based organization

10 underwrites the Permanente Medical Groups, which, through the care of over 11,000 physicians,

11 furnish medical care to Kaiser Permanente subscribers.  Described as "an integrated health delivery

12 system," Kaiser Permanente provides an array of services to membership by organizing and

13 coordinating or providing subscribers' health care (including preventive medicine), and also

14 providing other medical and pharmacy services through the network of Kaiser Foundation Hospitals

15 and their subsidiaries.

16    2.    Kaiser Foundation Hospitals, Inc. is also based in Oakland, California.  Kaiser

17 Foundation Hospitals, Inc. operates as a subsidiary of Kaiser Permanente and is a non-profit, public

18 benefit corporation that owns and operates 30 community hospitals in California, Hawaii, and

19 Oregon.

20    3.    Kaiser Permanente Information Technology (KP-IT) is one of the Kaiser

21 organizations responsible for Information Technology (IT) services and development throughout

22 Kaiser Permanente and is a department of Kaiser Foundation Hospitals, Inc., also hereinafter

23 referred to as the "DEFENDANTS."

24    4.    In 2003, Kaiser Permanente announced that $1.8 billion would be invested in

25 advanced information and communication technology systems including electronic medical records,

26 electronic appointment booking, electronic prescription refills and referral requests.  The program

27 represented one of the largest and most ambitious implementations of electronic medical records, in

28 a move that was intended to transform the quality, safety and efficiency of healthcare services

---

**FIRST AMENDED** COMPLAINT

1

1  delivered to Kaiser Permanente's 8.4 million members.

2       5.    Epic Systems partnered with Kaiser Permanente to provide this next-generation

3  system that includes web-based electronic medical records accessible online by both healthcare

4  professionals and patients. This system, "Kaiser Permanente HealthConnect," is an integrated

5  clinical and administrative information management system that integrates the patients electronic

6  medical record with their appointments, registration and billing information.  The system links KP

7  departments and facilities nationwide, providing KP physicians and care teams access to current and

8  comprehensive patient information and providing KP members 24/7 on-line access to key portions

9  of their medical record.

10       6.    Plaintiff Yvette Smith was employed by Defendant Kaiser Foundation Hospitals, Inc.

11  as a "Business Applications Coordinator" from July of 2004 until October of 2005.  In or around

12  October of 2005, Plaintiff Smith, along with her other coworkers employed as Business Application

13  Coordinators, were transferred to Kaiser Foundation Health Plan, Inc.  Plaintiff has since been

14  employed with Kaiser Foundation Health Plan, Inc. up to and until the present.

15       7.    Upon receiving Plaintiff Smith and the other Business Application Coordinators as

16  employees from Kaiser Foundation Hospitals, Inc., Kaiser Foundation Health Plan, Inc. gave

17  Plaintiff Smith and the other employees the new job titles of "Senior Business Application

18  Coordinators."

19       8.    Although Plaintiff Smith and her coworkers had previously been employed by

20  Defendant Kaiser Foundation Hospitals, Inc., upon and after being put on the payroll of Defendant

21  Kaiser Foundation Health Plan, Inc. and receiving the new titles of "Senior Business Application

22  Coordinators," the job duties of Plaintiff Smith and her fellow coworkers did not change.

23       9.    The job titles of "Business Application Coordinator" given by Defendant Kaiser

24  Foundation Hospitals Inc. and the job titles of "Senior Business Application Coordinators"

25  (hereinafter collectively referred to as "SBACs") given by Defendant Kaiser Foundation Health

26  Plan, Inc. were both described to Plaintiff Smith and the other SBACs as exempt and full time

27  positions.

28

10.     Plaintiff Tim Dodson was employed by Defendant Kaiser Foundation Health Plan, Inc. as a "Senior Business Applications Coordinator" from September of 2005 until May of 2008.

11.     For both DEFENDANTS, the PLAINTIFFS functioned as working members on the production side of DEFENDANTS' Information Technology ("IT") Staff.  The primary job duties of PLAINTIFFS and the other SBACs were employed by Kaiser Foundation Hospitals, Inc. and Kaiser Foundation Health Plan, Inc. were and are to provide training and technical support to hospital staff in connection with the Kaiser Permanente HealthConnect computer system ("HealthConnect"), which was installed as part of a procedure called "GoLive."  This project was instituted in order to ensure that all Kaiser Permanente facilities would use a common software system.  Intermittently, DEFENDANTS would deploy PLAINTIFFS and other SBACs in teams to Kaiser Permanente facilities in Northern California for month-long durations, where they, along with their team, provided training, technical support and assistance to hospital clinicians and staff in conjunction with the installation of the HealthConnect computer system during the "GoLive" procedure (the "DEPLOYMENT").  Kaiser Permanente also employs this same GoLive procedure in various San Diego County facilities.

12.     The work schedule during the DEPLOYMENTS lasted approximately four weeks where the PLAINTIFFS worked more than eight (8) hours a day and more than forty (40) hours each week.  As a result of this rigorous work schedule, PLAINTIFFS and other similarly situated employees were often unable to take meal or rest breaks.  Furthermore, PLAINTIFFS and the other team members were also required to deliver training sessions during their lunch periods called "Lunch & Learns."  The "Lunch & Learns" were deliberately scheduled during the meal periods so that the hospital clinicians and staff members could eat their lunch and learn about the HealthConnect system from the PLAINTIFFS, who were forced to deliver these training sessions during *their* meal periods.

13.     Prior to the GoLive, DEFENDANTS would also require PLAINTIFFS and their team members to participate in "Technical Dress Rehearsals."  During these sessions, PLAINTIFFS and their team members were required to test the software to ensure that the HealthConnect system was functioning properly.  Any problems or defects would have to be reported back to the

1   DEFENDANTS' employees who had the technical expertise to diagnose and cure the defects.  In

2   order to test the equipment without disturbing the hospital staff, these Rehearsals took place either

3   during meal periods, early in the morning, or late in the evening when the staff was not working in

4   the department.  This scheduling caused the workday, wherein PLAINTIFFS participated in the

5   "Technical Dress Rehearsals," to exceed eight (8) hours.  Overall, the first two weeks of the

6   DEPLOYMENT were consistently the most grueling.  The five (5) to six (6) day workweek

7   consisted of workdays which lasted as long as thirteen (13) hours.  Both the third and fourth weeks

8   of the DEPLOYMENT  contained five (5) to six (6) workdays, during which PLAINTIFFS and their

9   fellow team members worked approximately ten (10) hours each day.  Physical demands of this

10  position include and/or included standing, sitting, walking, and bending as needed to demonstrate

11  how to use the HealthConnect computer systems to hospital staff.  During the Class Period,

12  PLAINTIFFS and the members of their team worked and/or still work on the production side during

13  the various DEPLOYMENTS, but are nevertheless classified by DEFENDANTS as exempt from

14  overtime pay and worked more than eight (8) hours a day and more than forty (40) hours a week.

15       14.     The PLAINTIFFS and other SBACs were also required to remain on-

16  call pursuant to the DEFENDANTS' "on-call" rotation plan (the "ROTATIONS").  According to

17  the ROTATIONS, each staff member employed as a  SBACs took turns performing on-call duties.

18  The performance of each ROTATION lasted for an entire seven (7) day workweek, and was

19  required to be undertaken by each SBAC Staff Member at least once every two (2) months.  During

20  this time, after returning home from at least an eight (8) hour work day, the SBACs were required to

21  remain on stand-by for the entire night, every night of the week, for the entire week without

22  additional compensation.  Further, after working an entire workday on the Friday of the

23  ROTATION, the SBACs were required to remain on call twenty-four (24) hours a day from Friday

24  evening until Monday morning, when they would report to the employer's work site for their

25  "regular" workday.  The effect of DEFENDANTS' on-call rotational system is that, during the team

26  members rotation, the employee is subject to receiving a call and is effectively precluded from

27  engaging in any activity outside of work that would hinder his ability to immediately respond to the

28  technical support call.  This system places severe limitations on the activities of the SBACs and

1  accordingly, their time is predominantly spent for the benefit of the DEFENDANTS.  Each night of

2  every ROTATION, the SBACs' movements were severely geographically restricted by

3  DEFENDANTS' requirement that they respond to any work request receive via pager within thirty

4  (30) minutes by phone to the person requesting technical support and then begin working on the

5  technical support request at that time.  Although most of the work requests could be attended to by

6  using their laptops, DEFENDANTS required the SBACs to remain within thirty (30) minutes of the

7  DEFENDANTS' premises in case on-site technical support was needed.  Each night, while on-call,

8  the SBACs all were subjected to calls in conjunction with the unduly restrictive fixed, response

9  time-limit that necessitated an answer to each call.   As a result of the burden imposed by these

10  duties, PLAINTIFFS and the SBACs of the CLASS could not easily trade their on-call

11  responsibilities with another employee, as no one wanted this burden.  Further, PLAINTIFFS and

12  the SBACs were extremely restricted while on-call in the kind and extent of personal activities in

13  which they could engage.  Any personal activities which required longer than thirty (30) minutes to

14  perform without interruption, and/or required more than thirty  (30) minutes to travel to and from,

15  including, but not limited to, going to see a movie in a theater, dining at a restaurant, engaging in

16  organized sporting activities, participating in weddings, supplementing one's  income with a second

17  job, and/or attending to medical issues with the assistance of a doctor, dentist, or other professional,

18  had to be avoided entirely while on-call.  Another inconvenience imposed upon  PLAINTIFFS and

19  the SBACs was the inability to provide oneself with an entire night of uninterrupted sleep, as the

20  technical support calls often came in past eleven o'clock at night (11:00 p.m.) From the

21  DEFENDANTS' facility.  Despite these demanding conditions imposed by DEFENDANTS, regular

22  and overtime compensation for (a) the hours worked during the ROTATIONS and (b) the "on-call"

23  hours which restricted  PLAINTIFFS and the SBACs during the ROTATIONS as to be effectively

24  engaged to wait, were withheld by DEFENDANTS from  PLAINTIFFS and the SBACs.

25          15.      PLAINTIFFS ("PLAINTIFFS") bring this class action on behalf of themselves and a

26  California Class consisting of all individuals who are or previously were employed either by

27  Defendant Kaiser Foundation Hospitals, Inc. in a staff position as a Business Application

28  Coordinator or by Defendant Kaiser Foundation Health Plan, Inc. as a Senior Business Application

Coordinator or in any other similarly situated position (the "SBACs") (the "CALIFORNIA

CLASS") in California during the period beginning four years prior to the filing of this Complaint

and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD").

16.     As a matter of company policy, practice, and procedure, DEFENDANTS have

unlawfully, unfairly and/or deceptively classified every SBACs as exempt based on job title alone,

failed to pay the required overtime compensation and otherwise failed to comply with all labor laws

with respect to these SBACs.

17.     The Defendants named in this Complaint, including Does 1 through

100, inclusive, are, and at all times mentioned herein were, the agents, servants, and/or employees of

each of the other defendants and that each defendant was acting within the course of scope of his,

her or its authority as the agent, servant and/or employee of each of the other defendants (the

"DEFENDANTS").  Consequently, all the defendants are jointly and severally liable to the

PLAINTIFFS and the other members of the CALIFORNIA CLASS, for the losses sustained as a

proximate result of DEFENDANTS' conduct.

## THE CONDUCT

The Unlawful, Unfair, and/or Deceptive Failure to Have in Place a Company-Wide Policy,
Practice and Procedure to Correctly Determine Whether PLAINTIFFS and the members of the
CALIFORNIA CLASS were Properly Classified as Exempt

18.     The primary duties required of the SBACs are executed

by the performance of non-exempt labor within a defined skill set, involving installation,

troubleshooting, building, and training other users with respect to the operation of the KP

HealthConnect system.  Other duties included providing "Go-live" implementation, and also

providing ongoing support, which includes 24/7 support and issue resolution.

19.     Although PLAINTIFFS and the SBACs primarily performed the non-

exempt labor described herein above, DEFENDANTS instituted a blanket classification policy,

practice and/or procedure by which these employees were all classified as exempt from overtime

compensation.  By reason of this uniform exemption practice, policy and procedure applicable

1    to PLAINTIFFS and all other SBACs who performed this non-exempt labor, DEFENDANTS

2    committed acts of unfair competition in violation of the California Unfair Competition Law, Cal.

3    Bus. & Prof. Code § 17200 (the "UCL"), by engaging in a company-wide policy, practice and

4    procedure which failed to analyze the amount of non-exempt tasks performed by PLAINTIFFS and

5    thereafter correctly determine whether the PLAINTIFFS and the California Class of similarly

6    situated SBACs were properly classified as exempt.  The proper classification of these employees is

7    the DEFENDANTS' burden.  As a result of DEFENDANTS' intentional disregard of the obligation

8    to meet this burden, DEFENDANTS failed to properly calculate and/or pay all required overtime

9    compensation for work performed by the members of the CALIFORNIA CLASS and violated the

10   Fair Labor Standards Act and the California Labor Code and regulations promulgated thereunder as

11   herein alleged.

12        20.    DEFENDANTS, as a matter of law, have the burden of proving that (a) employees

13   are properly classified as exempt and that (b) DEFENDANTS otherwise complies with applicable

14   laws.  Other than the initial classification of the PLAINTIFFS and similarly situated SBACs as

15   exempt from being paid overtime based on job title alone, DEFENDANTS  had no business policy,

16   practice, or procedure to ensure that the PLAINTIFFS and similarly situated SBACs were properly

17   classified as exempt.

18        21.    During their employment with DEFENDANTS, PLAINTIFFS as SBACs on the

19            production side of DEFENDANTS' enterprise, performed non-exempt duties but

20            were nevertheless classified by DEFENDANTS as exempt from overtime pay and

21            worked more than eight (8) hours a day, forty (40) hours a week, and/or on the

22            seventh (7th) of a workweek.  In addition, PLAINTIFFS were not provided with all

23            required meal and rest period breaks during the class period and also frequently were

24            not provided with uninterrupted meal breaks.

25        22.    PLAINTIFFS and the other SBACs employed by DEFENDANTS

26   were not primarily engaged in work of a type that was or now is directly related to management

27   policies or general business operations, when giving these words a fair but narrow construction.

28   PLAINTIFFS and the other SBACs employed by DEFENDANTS were also not primarily engaged

1   in work of a type that was or now is performed at the level of the policy or management of the

2   DEFENDANTS.  To the contrary, the work of a SBAC Staff Member of the DEFENDANTS was

3   work wherein PLAINTIFFS and members of the CALIFORNIA CLASS were primarily engaged in

4   the day to day business operations of the DEFENDANTS to keep the computers that perform the

5   day to day work operating in accordance with the management policies and general business

6   operations established by DEFENDANTS' management.

7          23.     The fact that the work and those of other similarly situated employees involved a

8   computer and/or a specialized skill set in a defined technical area does not mean that the

9   PLAINTIFFS or other SBACs employed by DEFENDANTS are exempt from overtime wages.

10   Indeed, the exercise of discretion and independent judgment must be more than the use of a highly

11   technical skill set described in a manual or other sources.  The work that PLAINTIFFS and other

12   SBACs employed by DEFENDANTS were and are primarily engaged in performing day to day

13   activities is the work that is required to be performed as part of the day to day business of

14   DEFENDANTS.  As a result, PLAINTIFFS and other SBACs employed by DEFENDANTS were

15   primarily engaged in work that falls squarely on the production side of the administrative/production

16   worker dichotomy and should have been properly classified as non-exempt employees.

17          24.     PLAINTIFFS and all members of the CALIFORNIA CLASS  are and were

18   uniformly classified and treated by DEFENDANTS as exempt at the time of hire and thereafter,

19   DEFENDANTS failed to take the proper steps to determine whether PLAINTIFFS, and the other

20   members of the similarly-situated CALIFORNIA CLASS , were properly classified under Industrial

21   Welfare Commission Wage Order 4-2001 and Cal. Lab. Code §§ 510 et seq. and Section 13 of the

22   Fair Labor Standards Act (the "FLSA") as exempt from applicable federal and state labor laws.

23   Since DEFENDANTS affirmatively and wilfully had in place a business policy, practice and

24   procedure which failed to allow for an accurate determination of whether exempting PLAINTIFFS

25   and the members of the CALIFORNIA CLASS  complied with either the FLSA or the California

26   Labor Laws, DEFENDANTS' practices violated and continue to violate the law.  In addition, the

27   DEFENDANTS acted deceptively by falsely and fraudulently telling PLAINTIFFS  and each

28   member of the CALIFORNIA CLASS  that they were exempt from overtime pay when

1  DEFENDANTS knew or should have known that this statement was false and not based on known

2  facts. The DEFENDANTS also acted unfairly by violating the labor laws of the United States and

3  California. As a result of this policy and practice, DEFENDANTS violated the UCL.

4      The Unfair, Unlawful and/or Deceptive Failure to Provide Accurate Wage Statements

5      25.    DEFENDANTS provided and still provide PLAINTIFFS and similarly situated

6  SBACs with a paystub that fails to display all applicable hourly rates in effect during the pay period

7  and the corresponding number of hours worked at each hourly rate by the PLAINTIFFS and

8  similarly situated SBACs. This conduct violates California Labor Code § 226. The paystub also

9  does not display anywhere PLAINTIFFS' and similarly situated SBACs' overtime hours and

10  applicable rates of overtime pay for the pay period.

11      The Unfair, Unlawful and/or Deceptive Failure to Make Meal and Rest Periods Available

12      26.    DEFENDANT's policies, practices, and procedures fail to make meal and rest

13  periods available to PLAINTIFFS and the other SBACs. By regularly scheduling meetings,

14  activities or other work during the meal periods, DEFENDANTS fail to make available a full thirty

15  (30) minute period in which the SBACs are completely relieved of their duties and able to take an

16  uninterrupted meal break.

17      27.    By reason of this uniform conduct applicable to PLAINTIFF and all CALIFORNIA

18  CLASS members, DEFENDANTS committed acts of unfair competition in violation of the

19  California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL"), by engaging in a

20  company-wide policy and procedure which failed to correctly determine whether the PLAINTIFFS

21  and the CALIFORNIA CLASS of similarly situated SBACs were properly classified as exempt.

22  The proper classification of these employees is the DEFENDANTS' burden. As a result of

23  DEFENDANTS' intentional disregard of the obligation to meet this burden, DEFENDANTS failed

24  to properly calculate and/or pay all required overtime compensation for work performed by the

25  members of the CALIFORNIA CLASS and violated the Fair Labor Standards Act and the

26  California Labor Code and regulations promulgated thereunder as herein alleged.

27

28

1
2
3

**THE UCL REMEDIES**

4      28.      As a result of DEFENDANTS' UCL violation, PLAINTIFFS, on behalf of

5  themselves and the CALIFORNIA CLASS, seek disgorgement of DEFENDANTS' ill-gotten gains

6  into a fluid fund  to recover all the money that DEFENDANTS were required by law to pay, but

7  failed to pay, to PLAINTIFFS and all other CALIFORNIA CLASS members and restitution to

8  PLAINTIFFS and the CALIFORNIA CLASS.  PLAINTIFFS also seeks penalties and all other relief

9  available to them and other similarly situated employees under California law.  PLAINTIFFS also

10  seek declaratory relief finding that the employment practices and policies of the DEFENDANTS

11  violate California law and injunctive relief to enjoin the DEFENDANTS from continuing to engage

12  in such employment practices.

13      29.      PLAINTIFFS and the members of the CALIFORNIA CLASS have no plain, speedy

14  or adequate remedy at law and will suffer irreparable injury if DEFENDANTS are permitted to

15  continue to engage in the unlawful acts and practices herein alleged.  The illegal conduct alleged

16  herein is continuing and to prevent future injury and losses, and to avoid a multiplicity of lawsuits,

17  PLAINTIFFS are entitled to an injunction and other equitable relief, on behalf of himself and the

18  CLASS, to prevent and enjoin such practices.  PLAINTIFFS therefore request a preliminary and/or

19  permanent injunction as the DEFENDANTS provides no indication that DEFENDANTS will not

20  continue such wrongful activity in the future, along with restitution, penalties, interest,

21  compensation and other equitable relief as provided by law.

22
23

**THE CALIFORNIA CLASS**

24      30.      PLAINTIFFS bring the First Cause of Action for Unfair, Unlawful and

25  Deceptive Business Practices pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL") as a

26  class action, pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3) on behalf of a California Class,

27  defined as all those persons employed by DEFENDANTS as SBACs as hereinabove defined or

28  under equivalent job title in California beginning from the date four (4) years prior to the date of

1    filing of the complaint and ending on the date as set by the Court (the "CALIFORNIA CLASS

2    PERIOD")  who were classified by Defendant as exempt, and who have been or may still be subject

3    to the challenged exemption classification policies and practices used by DEFENDANTS (the

4    "CALIFORNIA CLASS") or ("CLASS").

5          31.      To the extent equitable tolling operates to toll claims by the CALIFORNIA CLASS

6    against DEFENDANTS, the CALIFORNIA CLASS PERIOD should be adjusted accordingly.

7          32.      DEFENDANTS, as a matter of corporate policy, practice and procedure, and in

8    violation of the applicable Labor Code, Industrial Welfare Commission ("IWC") Wage Order

9    Requirements, and the applicable provisions of California law, intentionally, knowingly, and

10    wilfully, engaged in a practice whereby DEFENDANTS unfairly, unlawfully, and deceptively failed

11    to institute a practice to ensure that the employees employed in a position as an SBAC Staff

12    Member properly were classified as exempt from the requirements of California Labor Code §§

13    510, et seq.

14          33.      DEFENDANTS have the burden of proof that each and every employee is properly

15    classified as exempt from the requirements of the Cal. Lab. Code §§ 510, et seq.  The

16    DEFENDANTS, however, as a matter of uniform and systematic policy and procedure failed to

17    have in place during the CALIFORNIA CLASS PERIOD and still fail to have in place a policy or

18    practice to make any individual determination of exemption for any CALIFORNIA CLASS

19    MEMBERS so as to satisfy their burden.  Rather, the DEFENDANTS' uniform policy and practice

20    in place at all times during the CALIFORNIA CLASS PERIOD and currently in place is to

21    systematically classify each and every California Class Member as exempt from the requirements of

22    the California Labor Code §§ 510, et seq., based on job title alone.  This common business practice

23    applicable to each and every California Class Member can be adjudicated on a classwide basis as

24    unlawful, unfair, and/or deceptive under Cal. Business & Professions Code §17200, *et seq.* (the

25    "UCL") as causation, damages, and reliance are not elements of this claim.

26          34.      At no time before, during or after the PLAINTIFFS' employment with

27    DEFENDANTS was any SBAC Staff Member reclassified as non-exempt from the applicable

28    requirements of California Labor Code §§ 510, *et seq.* after each California Class Member was

1   initially, uniformly, and systematically classified as exempt upon being hired.

2        35.    Any individual declarations of any California Class Members offered at this time

3   purporting to indicate that one or more SBAC Staff Member may have been properly classified is of

4   no force or affect absent evidence that DEFENDANTS had a uniform system in place to satisfy

5   DEFENDANTS' burden that DEFENDANTS, at all times had in effect a policy and practice to

6   determine whether the California Class Members were being properly classified as exempt pursuant

7   to Cal. Lab. Code §§ 510, et seq.  Absent proof of such a system, DEFENDANTS' business practice

8   is uniformly unlawful, unfair and/or deceptive under the UCL and may be so adjudicated on a

9   classwide basis.  As a result of the UCL violations, the PLAINTIFFS and the California Class

10   Members are entitled to have this unfair business practice enjoined and to cause DEFENDANTS to

11   disgorge their ill-gotten gains into a fluid fund and to restitute these funds to the PLAINTIFFS and

12   the California Class Members according to proof.

13        36.    The CALIFORNIA CLASS, numbering more than 100 members, is so numerous

14   that joinder of all SBACs, is impracticable.

15            (a)    Violating the California Unfair Competition Laws, Cal. Bus. & Prof. Code §

16                  17200, *et seq.* (the "UCL"), by unlawfully, unfairly and/or deceptively having

17                  in place company policies, practices and procedures that uniformly classified

18                  PLAINTIFFS and the members of the CALIFORNIA CLASS as exempt

19                  based on job title alone;

20            (b)    Committing an act of unfair competition in violation of the UCL, by

21                  unlawfully, unfairly, and/or deceptively failing to have in place a company

22                  policy, practice and procedure that accurately determined the amount of

23                  working time spent by PLAINTIFFS and the members of the CALIFORNIA

24                  CLASS performing non-exempt labor;

25            (c)    Committing an act of unfair competition in violation of the UCL, by  having

26                  in place a company policy, practice and procedure that failed to reclassify as

27                  non-exempt those members of the CALIFORNIA CLASS whose actual job

28                  duties are primarily comprised non-exempt job functions;

    (d)   Committing an act of unfair competition in violation of the UCL by violating Cal. Lab. Code §§510, *et seq.* by failing to pay the correct overtime pay to PLAINTIFFS and the members of the CALIFORNIA CLASS who were improperly classified as exempt;

    (e)   Committing an act of unfair competition in violation of the UCL by violating Cal. Lab. Code §§ 226.7 and 512, by failing to provide PLAINTIFFS and the members of the CALIFORNIA CLASS with meal and rest periods;

    (f)   Committing an act of unfair competition in violation of the UCL by violating Cal. Lab. Code § 226 by failing to provide PLAINTIFFS and the members of the CALIFORNIA CLASS with an accurate itemized statement in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee; and,

    (g)   Committing an act of unfair competition in violation of the UCL by violating Cal. Lab. Code § 203 by failing to provide restitution of wages owed to the members of the CALIFORNIA CLASS who were improperly classified as exempt and who have terminated their employment.

37.    This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Fed. R. Civ. Proc. 23(b)(2) and/or (3) in that:

    (a)   The persons who comprise the CALIFORNIA CLASS exceed 100 persons and are therefore so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

    (b)   Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the CALIFORNIA CLASS will apply uniformly to every member of the CALIFORNIA CLASS;

    (c)   The claims of the representative PLAINTIFFS are typical of the claims of each member of the CALIFORNIA CLASS.   PLAINTIFFS, like all other

members of the CALIFORNIA CLASS, were initially classified as exempt upon hiring based on job title alone and labored under DEFENDANTS' systematic procedure that failed to analyze the compensation paid to PLAINTIFFS and the members of the CALIFORNIA CLASS in order to determine whether the classification was properly made. PLAINTIFFS sustained economic injury as a result of DEFENDANTS' employment practices. PLAINTIFFS and the members of the CALIFORNIA CLASS were and are similarly or identically harmed by the same unlawful, deceptive, unfair and pervasive pattern of misconduct engaged in by the DEFENDANTS by deceptively advising all SBAC Class Members that they were exempt from overtime wages based on job title alone, and unfairly failing to pay overtime to employees who were improperly classified as exempt.

(d) The representative PLAINTIFFS will fairly and adequately represent and protect the interest of the CALIFORNIA CLASS, and has retained counsel who are competent and experienced in Class Action litigation. There are no material conflicts between the claims of the representative PLAINTIFFS and the members of the CALIFORNIA CLASS that would make class certification inappropriate. Counsel for the CALIFORNIA CLASS will vigorously assert the claims of all Class Members.

38. In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), in that:

(a) Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the CALIFORNIA CLASS will create the risk of:

1) Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA CLASS which would establish

1  incompatible standards of conduct for the parties opposing the

2  CALIFORNIA CLASS; and/or,

3  2)  Adjudication with respect to individual members of the

4  CALIFORNIA CLASS which would as a practical matter be

5  dispositive of interests of the other members not party to the

6  adjudication or substantially impair or impede their ability to protect

7  their interests.

8  (b)  The parties opposing the CALIFORNIA CLASS have acted or refused to act

9  on grounds generally applicable to the CALIFORNIA CLASS, making

10  appropriate class-wide relief with respect to the CALIFORNIA CLASS as a

11  whole in that the DEFENDANTS uniformly classified and treated the SBACs

12  as exempt and, thereafter, uniformly failed to take proper steps to determine

13  whether the SBACs were properly classified as exempt, and thereby denied

14  these employees overtime wages as required by law;

15  1)  With respect to the First Cause of Action, the final relief on behalf of

16  the CALIFORNIA CLASS sought does not relate exclusively to

17  disgorgement into a fluid fund restitution because through this claim

18  PLAINTIFFS seeks declaratory relief holding that the

19  DEFENDANTS' policy and practices constitute unfair competition,

20  along with declaratory relief, injunctive relief, and incidental

21  equitable relief as may be necessary to prevent and remedy the

22  conduct declared to constitute unfair competition;

23  (c)  Common questions of law and fact exist as to the members of the

24  CALIFORNIA CLASS, with respect to the practices and violations of

25  California Law as listed above, and predominate over any question affecting

26  only individual members, and a Class Action is superior to other available

27  methods for the fair and efficient adjudication of the controversy, including

28  consideration of:

1        1)    The interests of the members of the CALIFORNIA CLASS in

2              individually controlling the prosecution or defense of separate actions

3              in that the substantial expense of individual actions will be avoided to

4              recover the relatively small amount of economic losses sustained by

5              the individual CALIFORNIA CLASS members when compared to the

6              substantial expense and burden of individual prosecution of this

7              litigation;

8        2)    Class certification will obviate the need for unduly duplicative

9              litigation that would create the risk of:

10            A.    Inconsistent or varying adjudications with respect to

11                    individual members of the CALIFORNIA CLASS, which

12                    would establish incompatible standards of conduct for the

13                    DEFENDANTS; and/or,

14            B.    Adjudications with respect to individual members of the

15                    CALIFORNIA CLASS would as a practical matter be

16                    dispositive of the interests of the other members not parties to

17                    the adjudication or substantially impair or impede their ability

18                    to protect their interests;

19        3)    In the context of wage litigation because as a practical matter a

20              substantial number of individual class members will avoid asserting

21               their legal rights out of fear of retaliation by DEFENDANTS, which

22               may adversely affect an individual's job with DEFENDANTS or with

23               a subsequent employer, the Class Action is the only means to assert

24               their claims through a representative; and,

25        4)    A class action is superior to other available methods for the fair and

26               efficient adjudication of this litigation because class treatment will

27               obviate the need for unduly and unnecessary duplicative litigation that

28              is likely to result in the absence of certification of this action pursuant

1          to Fed. R. Civ. Proc. 23(b)(3).

2          39.     This Court should permit this action to be maintained as a Class Action

3   pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3) because:

4          (a)     The questions of law and fact common to the CALIFORNIA CLASS

5                  predominate over any question affecting only individual members because

6                  the DEFENDANTS' employment practices were uniform and systematically

7                  applied with respect to the CALIFORNIA CLASS;

8          (b)     A Class Action is superior to any other available method for the fair and

9                  efficient adjudication of the claims of the members of the CALIFORNIA

10                 CLASS because in the context of employment litigation a substantial number

11                 of individual Class members will avoid asserting their rights individually out

12                 of fear of retaliation or adverse impact on their employment;

13         (c)     The members of the CALIFORNIA CLASS exceed 100 people and are

14                 therefore so numerous that it is impractical to bring all members of the

15                 CALIFORNIA CLASS before the Court;

16         (d)     PLAINTIFFS, and the other CALIFORNIA CLASS members, will not be

17                 able to obtain effective and economic legal redress unless the action is

18                 maintained as a Class Action;

19         (e)     There is a community of interest in obtaining appropriate legal and equitable

20                 relief for the acts of unfair competition, statutory violations and other

21                 improprieties, and in obtaining adequate compensation for the damages and

22                 injuries which DEFENDANTS' actions have inflicted upon the

23                 CALIFORNIA CLASS;

24         (f)     There is a community of interest in ensuring that the combined assets of

25                 DEFENDANTS are sufficient to adequately compensate the members of the

26                 CALIFORNIA CLASS for the injuries sustained;

27         (g)     DEFENDANTS have acted or refused to act on grounds generally applicable

28                 to the CALIFORNIA CLASS, thereby making final class-wide relief

1       appropriate with respect to the CALIFORNIA CLASS as a whole;

2       (h)    The members of the CALIFORNIA CLASS are readily ascertainable from

3              the business records of DEFENDANT.  The CALIFORNIA CLASS consists

4              of all DEFENDANTS' SBACs employed in California during the

5              CALIFORNIA CLASS PERIOD; and,

6       (i)    Class treatment provides manageable judicial treatment calculated to bring a

7              efficient and rapid conclusion to all litigation of all wage and hour related

8              claims arising out of the conduct of DEFENDANTS as to the members of the

9              CALIFORNIA CLASS.

10      40.    DEFENDANTS maintain records from which the Court can ascertain and identify

11   by job title each of DEFENDANTS' employees who as have been systematically, intentionally and

12   uniformly subjected to DEFENDANTS' corporate policy, practices and procedures as herein

13   alleged.  PLAINTIFFS will seek leave to amend the complaint to include any additional job titles of

14   similarly situated employees when they have been identified.

15

16                          **THE CALIFORNIA LABOR SUB-CLASS**

17      41.    PLAINTIFFS further bring the Second, Third, Fourth, and Fifth causes

18   of action on behalf of a subclass which consists of all members of the CALIFORNIA CLASS who

19   were employed by DEFENDANTS during the period three (3) years prior to the filing of the

20   complaint and ending on the date as determined by the Court (CALIFORNIA LABOR SUB-CLASS

21   PERIOD), with documented overtime hours who were classified by DEFENDANTS as exempt, and

22   who performed work in excess of eight (8) hours in one day and/or forty (40) hours in one week

23   and/or hours on the seventh (7th) consecutive day of a workweek and did not receive overtime

24   compensation as required by Labor Code Section 510 and Wage Order 4-2001 (the "CALIFORNIA

25   LABOR SUBCLASS") pursuant to Fed. R. Civ. Proc. 23(b)(3).

26      42.    DEFENDANTS, as a matter of corporate policy, practice and procedure, and in

27   violation of the applicable California Labor Code ("Labor Code"), and Industrial Welfare

28   Commission ("IWC") Wage Order Requirements intentionally, knowingly, and wilfully, on the

1  basis of job title alone and without regard to the actual overall requirements of the job,

2  systematically classified  PLAINTIFFS and the other members of the CALIFORNIA CLASS and

3  the CALIFORNIA LABOR SUBCLASS as exempt from overtime wages and other labor laws in

4  order to avoid the payment of overtime wages by misclassifying their positions as exempt from

5  overtime wages and other labor laws.  To the extent equitable tolling operates to toll claims by the

6  CALIFORNIA CLASS and SUBCLASS against DEFENDANTS,  the Class Periods should be

7  adjusted accordingly.

8    43.    DEFENDANTS have intentionally and deliberately created a number of job levels

9  and job titles such as "Business Application Coordinators" by Kaiser Foundation Hospitals, Inc. and

10  "Senior Business Application Coordinators" by Kaiser Foundation Health Plan, Inc.  These titles

11  were distributed in order to create the superficial appearance of a number of unique jobs, when in

12  fact, these jobs are substantially similar and can be easily grouped together for the purpose of

13  determining whether they are exempt from overtime wages.  One of DEFENDANTS's purposes in

14  creating and maintaining this multi-level job classification scheme is to create a roadblock to

15  discovery and class certification for all employees similarly misclassified as exempt.

16  DEFENDANTS has uniformly misclassified these CALIFORNIA CLASS and CALIFORNIA

17  LABOR SUBCLASS  members as exempt and denied them overtime wages and other benefits to

18  which non-exempt employees are entitled in order to unfairly cheat the competition and unlawfully

19  profit.

20    44.    DEFENDANTS maintain records from which the Court can ascertain and

21  identify by job title each of DEFENDANTS's employees who as CALIFORNIA CLASS and

22  CALIFORNIA LABOR SUBCLASS  members have been systematically, intentionally and

23  uniformly misclassified as exempt as a matter of DEFENDANTS' corporate policy, practices and

24  procedures.  PLAINTIFFS will seek leave to amend the complaint to include these additional job

25  titles when they have been identified.

26    45.    The CALIFORNIA LABOR SUB-CLASS is so numerous that joinder of all

27  members, which number over SBACs, is impracticable.

28    46.    Common questions of law and fact exist as to members of the CALIFORNIA

**FIRST AMENDED** COMPLAINT

19

1  LABOR SUB-CLASS, including, but not limited, to the following:

2         (a)   Whether DEFENDANTS unlawfully failed to pay overtime compensation to

3               members of the CALIFORNIA LABOR SUB-CLASS in violation of the

4               California Labor Code and applicable regulations and California Wage Order

5               4-2001;

6         (b)   Whether the members of the CALIFORNIA LABOR SUB-CLASS are non-

7               exempt employees entitled to overtime compensation for overtime hours

8               worked under the overtime pay requirements of California Law;

9         (c)   Whether DEFENDANTS' policy and practice of classifying the SUBCLASS

10              members as exempt from overtime compensation and failing to pay the

11              CALIFORNIA LABOR SUB-CLASS members overtime violate applicable

12              provisions of California law;

13        (d)   Whether DEFENDANTS unlawfully failed to keep and furnish California

14              members with accurate records of hours worked;

15        (e)   Whether DEFENDANTS' policy and practice of failing to pay members of

16              the CALIFORNIA LABOR SUB-CLASS all wages when due within the time

17              required by law after their employment ended violates California law;

18        (f)   Whether DEFENDANTS unlawfully failed to provide all required meal and

19              rest periods to the members of the CALIFORNIA LABOR SUB-CLASS;

20        (g)   Whether DEFENDANTS unlawfully failed to tender full payment and/or

21              indemnification for all business expenses incurred as a consequence of

22              performing their work for DEFENDANTS; and,

23        (h)   The proper measure of damages and penalties owed to the members of the

24              CALIFORNIA LABOR SUB-CLASS.

25     47.     DEFENDANT, as a matter of corporate policy, practice and procedure, classified all

26 SBACs as exempt from overtime wages and other labor laws.  All SBACs, including the

27 PLAINTIFF, performed the same primary functions and were paid by DEFENDANTS according to

28 uniform and systematic company procedures, which, as alleged herein above, failed to correctly pay

overtime compensation. This business practice was uniformly applied to each and every member of the CALIFORNIA LABOR SUBCLASS, and therefore, the propriety of this conduct can be adjudicated on a class-wide basis.

48.    DEFENDANTS violated the rights of the CALIFORNIA LABOR SUBCLASS under California law by:

      (a)   Violating Cal. Lab. Code §§ 510, et seq. by misclassifying and thereby failing to pay PLAINTIFFS and the members of the CALIFORNIA LABOR SUBCLASS the correct overtime pay for a work day longer than eight (8) hours and/or a workweek longer than forty (40) hours, and also for all hours worked on the seventh (7th) day of a workweek for which DEFENDANTSis liable pursuant to Cal. Lab. Code § 1194;

      (b)   Violating Cal. Lab. Code § 203, which provides that when an employee is discharged or quits from employment, the employer must pay the employee all wages due without abatement, by failing to tender full payment and/or restitution of wages owed or in the manner required by California law to the members of the CALIFORNIA LABOR SUBCLASS who have terminated their employment;

      (c)   Violating Cal. Lab. Code §§ 226.7 and 512, by failing to provide PLAINTIFFS and the members of the CALIFORNIA LABOR CLASS who were improperly classified as exempt with meal and rest periods; and,

      (d)   Violating Cal. Lab. Code § 226 by failing to provide PLAINTIFFS and the members of the CALIFORNIA LABOR CLASS who were improperly classified as exempt with an accurate itemized statement in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

49.    This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Fed. R. Civ. Proc. 23(b)(3), in that:

(a)   The persons who comprise the CALIFORNIA LABOR SUBCLASS exceed 100 individuals and are therefore so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b)   Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the CALIFORNIA LABOR SUBCLASS and will apply uniformly to every member of the CALIFORNIA LABOR SUBCLASS;

(c)   The claims of the representative PLAINTIFFS are typical of the claims of each member of the CALIFORNIA LABOR SUBCLASS.  PLAINTIFFS, like all other members of the CALIFORNIA LABOR SUBCLASS were improperly classified as exempt and denied overtime pay as a result of DEFENDANT's systematic classification practices.  PLAINTIFFS and all other members of the CALIFORNIA LABOR SUBCLASS sustained economic injuries arising from DEFENDANT's violations of the laws of California; and,

(d)   The representative PLAINTIFFS will fairly and adequately represent and protect the interest of the CALIFORNIA LABOR SUBCLASS, and has retained counsel who are competent and experienced in Class Action litigation.  There are no material conflicts between the claims of the representative PLAINTIFFS and the members of the CALIFORNIA LABOR SUBCLASS that would make class certification inappropriate.  Counsel for the CALIFORNIA LABOR SUBCLASS will vigorously assert the claims of all Class Members.

50.   In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(3), in that:

(a)   Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of

separate actions by individual members of the CALIFORNIA LABOR
SUBCLASS will create the risk of:

    1)    Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA LABOR SUBCLASS which would establish incompatible standards of conduct for the parties opposing the CALIFORNIA LABOR SUBCLASS; or,

    2)    Adjudication with respect to individual members of the CALIFORNIA LABOR SUBCLASS which would as a practical matter be dispositive of interests of the other members not party to the adjudication or substantially impair or impede their ability to protect their interests.

(b)    The parties opposing the CALIFORNIA LABOR SUBCLASS have acted or refused to act on grounds generally applicable to the CALIFORNIA SUBCLASS, making appropriate class-wide relief with respect to the SUBCLASS as a whole in that the DEFENDANTS uniformly classified and treated the SBACs as exempt and, thereafter, uniformly failed to take proper steps to determine whether the SBACs were properly classified as exempt, and thereby denied these employees overtime wages as required by law;

(c)    Common questions of law and fact predominate as to the members of the CALIFORNIA LABOR SUBCLASS, with respect to the practices and violations of California Law as listed above, and predominate over any question affecting only individual members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

    1)    The interests of the members of the CALIFORNIA LABOR SUBCLASS in individually controlling the prosecution or defense of separate actions in that the substantial expense of individual actions will be avoided to recover the relatively small amount of economic

losses sustained by the individual CALIFORNIA LABOR

SUBCLASS members when compared to the substantial expense and

burden of individual prosecution of this litigation;

2)   Class certification will obviate the need for unduly duplicative

litigation that would create the risk of:

A.   Inconsistent or varying adjudications with respect to

individual members of the CALIFORNIA LABOR

SUBCLASS, which would establish incompatible standards of

conduct for the DEFENDANTS; and/or,

B.   Adjudications with respect to individual members of the

CALIFORNIA LABOR SUBCLASS would as a practical

matter be dispositive of the interests of the other members not

parties to the adjudication or substantially impair or impede

their ability to protect their interests;

3)   In the context of wage litigation because a substantial number of

individual class members will avoid asserting their legal rights out of

fear of retaliation by DEFENDANTS, which may adversely affect an

individual's job with DEFENDANTS or with a subsequent employer,

the Class Action is the only means to assert their claims through a

representative; and,

4)   A class action is superior to other available methods for the fair and

efficient adjudication of this litigation because class treatment will

obviate the need for unduly and unnecessary duplicative litigation that

is likely to result in the absence of certification of this action pursuant

to Fed. R. Civ. Proc. 23(b)(3).

51.   This Court should permit this action to be maintained as a Class Action pursuant to

Fed. R. Civ. Proc. 23(b)(3) because:

(a)   The questions of law and fact common to the CALIFORNIA LABOR

SUBCLASS predominate over any question affecting only individual members;

(b) A Class Action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the CALIFORNIA LABOR SUBCLASS because in the context of employment litigation a substantial number of individual Class members will avoid asserting their rights individually out of fear of retaliation or adverse impact on their employment;

(c) The members of the CALIFORNIA LABOR SUBCLASS exceed 100 individuals and are therefore so numerous that it is impractical to bring all members of the CALIFORNIA LABOR SUBCLASS before the Court;

(d) PLAINTIFF, and the other CALIFORNIA LABOR SUBCLASS members, will not be able to obtain effective and economic legal redress unless the action is maintained as a Class Action;

(e) There is a community of interest in obtaining appropriate legal and equitable relief for the acts of unfair competition, statutory violations and other improprieties, and in obtaining adequate compensation for the damages and injuries which DEFENDANTS' actions have inflicted upon the CALIFORNIA LABOR SUBCLASS;

(f) There is a community of interest in ensuring that the combined assets of DEFENDANTS are sufficient to adequately compensate the members of the CALIFORNIA LABOR SUBCLASS for the injuries sustained;

(g) DEFENDANTS have acted or refused to act on grounds generally applicable to the CALIFORNIA LABOR SUBCLASS, thereby making final class-wide relief appropriate with respect to the CALIFORNIA LABOR SUBCLASS as a whole;

(h) The members of the CALIFORNIA LABOR SUBCLASS are readily ascertainable from the business records of DEFENDANTS.  The

CALIFORNIA LABOR SUBCLASS consists of those SBACs who worked

overtime ours and who were not paid overtime; and,

(i)     Class treatment provides manageable judicial treatment calculated to bring a

efficient and rapid conclusion to all litigation of all wage and hour related

claims arising out of the conduct of DEFENDANTS.

## JURISDICTION AND VENUE

52.     This Court has jurisdiction over PLAINTIFFS' federal claim pursuant to 28 U.S.C.§

1331 and supplemental jurisdiction of PLAINTIFFS' state law claims pursuant to 28 U.S.C. § 1367.

53.     The CALIFORNIA CLASS ACTION (1) involves 100 or more putative

class members, (2) many class members are citizens of a state different from DEFENDANTS; and,

(3) the aggregate amount in controversy exceeds $5 million (exclusive of costs and interest).

54.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because

DEFENDANTS (i) are subject to personal jurisdiction in this District and  therefore, reside in this

District and/or (ii) committed the wrongful conduct against certain members of the CLASS in San

Diego County, California.

## FIRST CAUSE OF ACTION

### For Unlawful Business Practices

### [Cal. Bus. And Prof. Code § 17200 et seq.]

### (By PLAINTIFFS and the CALIFORNIA CLASS and against All Defendants)

55.     PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 54

of this Complaint.

56.     DEFENDANTS are "persons" as that term is defined under Cal. Bus.

And Prof. Code § 17021.

57.     California Business & Professions Code § 17200 et seq. (the "UCL")

defines unfair competition as any unlawful, unfair, or fraudulent business act or practice.  Section

17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair

1  competition as follows:

2

3       Any person who engages, has engaged, or proposes to engage in unfair competition
        may be enjoined in any court of competent jurisdiction. The court may make such
4       orders or judgments, including the appointment of a receiver, as may be necessary to
        prevent the use or employment by any person of any practice which constitutes unfair
5       competition, as defined in this chapter, or as may be necessary to restore to any
        person in interest any money or property, real or personal, which may have been
6       acquired by means of such unfair competition.

7  California Business & Professions Code § 17203.

8       58.    By the conduct alleged herein, DEFENDANTS have engaged and

9  continue to engage in a business practice which violates California law, including but not limited to

10 provisions of the Wage Orders, the California Labor Code, the opinions of the Department of Labor

11 Standards Enforcement, California Labor Code § 450, for which this Court should issue declaratory,

12 injunctive and other equitable relief, pursuant to Cal. Bus. & Prof. Code § 17203, as may be

13 necessary to prevent and remedy the conduct held to constitute unfair competition.

14      59.    By and through the unfair and unlawful business practices described

15 herein above, DEFENDANTS have obtained valuable property, money, and services from the

16 PLAINTIFFS, and the other members of the CALIFORNIA CLASS, and has deprived them of

17 valuable rights and benefits guaranteed by law, all to their detriment and to the benefit of

18 DEFENDANTS so as to allow DEFENDANTS to unfairly compete.  Declaratory and injunctive

19 relief is necessary to prevent and remedy this unfair competition, and pecuniary compensation alone

20 would not afford adequate and complete relief.

21      60.    All the acts described herein as violations of, among other things, the

22 Cal. Lab. Code, California Code of Regulations, and the Industrial Welfare Commission Wage

23 Orders, are unlawful, are in violation of public policy, are immoral, unethical, oppressive, and

24 unscrupulous, and are likely to deceive employees, and thereby constitute deceptive, unfair and

25 unlawful business practices in violation of Cal. Bus. and Prof. Code § 17200 et seq.

26      61.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS, are

27 further entitled to, and do, seek a declaration that the above described business practices are

28 deceptive unfair and/or unlawful and that an injunctive relief should be issued restraining

---

**FIRST AMENDED** COMPLAINT
27

1  DEFENDANTS from engaging in any of these deceptive, unfair and unlawful business practices in

2  the future.

3       62.      PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

4  have no plain, speedy, and/or adequate remedy at law that will end the unfair and unlawful business

5  practices of DEFENDANTS.  Further, the practices herein alleged presently continue to occur

6  unabated.  As a result of the unfair and unlawful business practices described above, PLAINTIFFS,

7  and the other members of the CALIFORNIA CLASS, have suffered and will continue to suffer

8  irreparable harm unless DEFENDANTS are restrained from continuing to engage in these unfair

9  and unlawful business practices.  In addition, DEFENDANTS should be required to disgorge the

10  unpaid moneys, penalties and interest as required by law  and make restitution to PLAINTIFFS, and

11  the other members of the CALIFORNIA CLASS.

12

13                **SECOND  CAUSE OF ACTION**

14            **For Failure To Pay Overtime Compensation**

15         **[Cal. Lab. Code §§ 510, 515.5, 551, 552, 1194 and 1198]**

16         **(By PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS)**

17       63.      PLAINTIFFS, and the other members of the CALIFORNIA LABOR

18  SUBCLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs

19  1 through 62 of this Complaint.

20       64.      Cal. Lab. Code § 510 states in relevant part:

21            Eight hours of labor constitutes a day's work. Any work in excess of eight hours in

22            one workday and any work in excess of 40 hours in any one workweek and the first

23            eight hours worked on the seventh day of work in any one workweek shall be

24            compensated at the rate of no less than one and one-half times the regular rate of pay

25            for an employee. Any work in excess of 12 hours in one day shall be compensated at

26            the rate of no less than twice the regular rate of pay for an employee. In addition, any

27            work in excess of eight hours on any seventh day of a workweek shall be

28            compensated at the rate of no less than twice the regular rate of pay of an employee.

65.   Cal. Lab. Code § 551 states that, "Every person employed in any occupation of labor is entitled to one day's rest therefrom in seven."

66.   Cal. Lab. Code § 552 states that, "No employer of labor shall cause his employees to work more than six days in seven."

67.   Cal. Lab. Code § 515(d) provides: "For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary.

68.   Cal. Lab. Code § 1194 states:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

69.   Cal. Lab. Code § 1198 provides: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

70.   In addition, Labor Code Section 558 provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was

1                   underpaid in addition to an amount sufficient to recover underpaid wages.

2                   (3) Wages recovered pursuant to this section shall be paid to the affected

3                   employee.

4              (b) If upon inspection or investigation the Labor Commissioner determines that a

5              person had paid or caused to be paid a wage for overtime work in violation of any

6              provision of this chapter, or any provision regulating hours and days of work in any

7              order of the Industrial Welfare Commission, the Labor Commissioner may issue a

8              citation. The procedures for issuing, contesting, and enforcing judgments for

9              citations or civil penalties issued by the Labor Commissioner for a violation of this

10            chapter shall be the same as those set out in Section 1197.1.

11          (c) The civil penalties provided for in this section are in addition to any other civil or

12            criminal penalty provided by law.

13     71.     DEFENDANTS have intentionally and uniformly designated certain

14   employees as "exempt" employees, by their job title and without regard to DEFENDANTS' realistic

15   expectations and actual overall requirements of the job, including PLAINTIFFS and the other

16   members of the  CALIFORNIA LABOR SUBCLASS who worked on the production side of the

17   DEFENDANTS' business.  This was done in an illegal attempt to avoid payment of overtime wages

18   and other benefits in violation of the Cal. Lab. Code and Industrial Welfare Commission

19   requirements.

20     72.     For an employee to be exempt as a bona fide "executive," all the

21   following criteria must be met and DEFENDANTS have the burden of proving that:

22     (a)     The employee's primary duty must be management of the enterprise, or of a

23            customarily recognized department or subdivision; and,

24     (b)     The employee must customarily and regularly direct the work of at least two (2) or

25            more other employees; and,

26     (c)     The employee must have the authority to hire and fire, or to command particularly

27            serious attention to his or his recommendations on such actions affecting other

28            employees; and,

(d)     The employee must customarily and regularly exercise discretion and independent judgment; and,

(e)     The employee must be primarily engaged in duties which meet the test of exemption. No member of the  CALIFORNIA LABOR SUBCLASS was or is an executive because they all fail to meet the requirements of being an "executive" within the meaning of Order No. 4-2001.

73.     For an employee to be exempt as a bona fide "administrator," all of the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)     The employee must perform office or non-manual work directly related to management policies or general business operation of the employer; and,

(b)     The employee must customarily and regularly exercise discretion and independent judgment; and,

(c)     The employee must regularly and directly assist a proprietor or an exempt administrator; or,

(d)     The employee must perform, under only general supervision, work requiring special training, experience, or knowledge, or,

(e)     The employee must execute special assignments and tasks under only general supervision; and,

(f)     The employee must be primarily engaged in duties which meet the test of exemption. No member of the  CALIFORNIA LABOR SUBCLASS was or is an administrator because they all fail to meet the requirements for being  an "administrator" under Order No. 4-2001.

74.     The Industrial Welfare Commission, ICW Wage Order 4-2001, at section (1)(A)(3)(h), at Labor Code § 515, and Cal. Lab. ' 515.5 also set forth the requirements which must be complied with to place an employee in the "professional" exempt category.  For an employee to be "exempt" as a bona fide "professional", all the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)     The employee is primarily engaged in an occupation commonly recognized as a learned or artistic profession.  For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

1          1)    Work requiring knowledge of an advanced type in a field or science or

2                learning customarily acquired by a prolonged course of specialized

3                intellectual instruction and study, as distinguished from a general academic

4                education and from an apprenticeship, and from training in the performance

5                of routine mental, manual, or physical processes, or work that is an essential

6                part or necessarily incident to any of the above work; or,

7          2)    Work that is original and creative in character in a recognized field of artistic

8                endeavor, and the result of which depends primarily on the invention,

9                imagination or talent of the employee or work that is an essential part of or

10               incident to any of the above work; and,

11         3)    Whose work is predominately intellectual and varied in character (as opposed

12               to routine mental, manual, mechanical, or physical work) and is of such

13               character cannot be standardized in relation to a given period of time.

14    (b)    The employee must customarily and regularly exercise discretion and independent

15         judgment; and.

16    (c)    The employee earns a monthly salary equivalent to no less than two (2) times the

17         state minimum wage for full-time employment.

18      No member of the CALIFORNIA LABOR SUBCLASS was or is a professional because

19 they all fail to meet the requirements of being a "professional" within the meaning of Order No. 4-

20 2001.  In particular, for an employee to be "exempt" as a bona fide "professional" with respect to

21 the requirements for a computer software employee, all the following criteria must be met and

22 DEFENDANTS have the burden of proving that:

23    (a)    The employee must primarily perform work which is intellectual or creative and that

24         requires the exercise of discretion and independent judgment; and,

25    (b)    The employee is primarily engaged in duties which consist of one or more of the

26         following:

27          1)    the application of systems analysis techniques and procedures, including

28               consulting with users, to determine hardware, software, or system functional

1      specifications;

2      2)      the design, development, documentation, analysis, creation, testing or

3              modification of computer systems or programs, including prototypes, based

4              on and related to user or system design specifications;

5      3)      the documentation, testing, creation or modification of computer programs

6              related to the design of the software or hardware for computer operating

7              systems; and,

8      (c)     The employee must be highly skilled and proficient in the theoretical and practical

9              application of highly specialized information to computer systems analysis,

10             programming and software engineering.  A job title shall not be determinative of the

11             applicability of this exemption; and,

12     (d)     The employee's hourly rate of pay is not less than forty-one dollars ($ 41.00), or the

13             annualized full-time salary equivalent of that rate, provided that all other

14             requirements of this section are met and that in each workweek the employee

15             receives not less than forty-one dollars ($ 41.00) per hour worked. This is the rate

16             which is adjusted by the DLSR on October 1 of each year to be effective on January

17             1 of the following year by an amount equal to the percentage increase in the

18             California Consumer Price Index for Urban Wage Earners and Clerical Workers.

19     1)      The adjusted rates for each year of the CALIFORNIA LABOR

20             SUBCLASS are as follows: In 2002, the rate was $42.64.  In 2003, the rate

21             was $43.58.  In 2004, the rate was $44.63.  In 2005, the rate was $45.84.  In

22             2006, the rate was $47.81.  In 2007, the rate was $49.77.  No member of the

23             CALIFORNIA CLASS was or is an exempt  "Computer Software Employee"

24             because they all fail to meet the requirements of Order No. 4-2001.

25     PLAINTIFFS and all members of  the  CALIFORNIA LABOR SUBCLASS were paid less than

26     these amounts during the Class Period.

27     75.     PLAINTIFFS, and other members of the  CALIFORNIA LABOR

28     SUBCLASS, do not fit the definition of an exempt executive, administrative, or professional

---

**FIRST AMENDED** COMPLAINT

33

1  employee because:

2      (a)    They did not work as executives or administrators; and,

3      (b)    The professional exemption articulated in Wage Order 4-2001, section (1)(A)(3)(h)

4          and Labor Code § 515, and the professional exemption articulated in Cal. Lab. Code

5          § 515.5, does not apply to PLAINTIFFS, nor to the other members of the

6          CALIFORNIA LABOR

7          SUBCLASS, because they are either computer software employees paid less than the

8          requisite amount set forth in Cal. Lab. § 515.5(a)(4) and under subdivision

9          (1)(A)(3)(h)(iv) of Order No. 4-2001, and/or did not otherwise meet all the

10          applicable requirements to work under the exemption of computer software

11          employee for the reasons set forth above in this Complaint.

12      76.    During the class period, the PLAINTIFFS, and other members of the

13  CALIFORNIA LABOR SUBCLASS, worked more than eight (8) hours in a workday and/or forty

14  (40) hours in a work week, and also worked on the seventh (7th) day of a workweek.

15      77.    At all relevant times, DEFENDANTS failed to pay PLAINTIFFS, and

16  other members of the  CALIFORNIA LABOR SUBCLASS, overtime compensation for the hours

17  they have worked in excess of the maximum hours permissible by law as required by Cal. Lab.

18  Code §§ 510 and 1198, even though PLAINTIFFS, and the other members of the  CALIFORNIA

19  LABOR SUBCLASS, were regularly required to work, and did in fact work, overtime hours.

20      78.    By virtue of DEFENDANTS' unlawful failure to pay addition

21  compensation to the PLAINTIFFS, and the other members of the CALIFORNIA LABOR

22  SUBCLASS, for their regular and overtime hours, the PLAINTIFFS, and the other members of the

23  CALIFORNIA LABOR SUBCLASS, have suffered, and will continue to suffer, an economic injury

24  in amounts which are presently unknown to them and which will be ascertained according to proof

25  at trial.

26      79.    DEFENDANTS knew or should have known that PLAINTIFFS, and the

27  other members of the  CALIFORNIA LABOR SUBCLASS, were misclassified  as exempt and

28  DEFENDANTS systematically elected, either through intentional malfeasance or gross

1    nonfeasance, not to pay them for their overtime labor as a matter of uniform corporate policy,

2    practice and procedure.

3       80.    Therefore, PLAINTIFFS, and the other members of the CALIFORNIA

4    LABOR SUBCLASS, request recovery of regular and overtime compensation according to proof,

5    interest, attorney's fees and cost pursuant to § 1194(a), as well as the assessment of any statutory

6    penalties against DEFENDANTS, in a sum as provided by the Cal. Lab. Code and/or other statutes.

7    Further, PLAINTIFFS, and the other members of the CALIFORNIA LABOR SUBCLASS, are

8    entitled to seek and recover reasonable attorneys' fees and costs pursuant to §1194.

9       81.    In performing the acts and practices herein alleged in violation of labor

10    laws and refusing to provide the requisite regular and overtime compensation, the DEFENDANTS

11    acted and continue to act intentionally, oppressively, and maliciously toward the PLAINTIFFS, and

12    toward the other members of the CALIFORNIA LABOR SUBCLASS, with a conscious and utter

13    disregard of their legal rights, or the consequences to them, and with the despicable intent of

14    depriving them of their property and legal rights and otherwise causing them injury in order to

15    increase corporate profits at the expense of PLAINTIFFS and the members of the Class.

16

17              **THIRD CAUSE OF ACTION**

18            **For Failure to Pay Wages When Due**

19              **[ Cal. Lab. Code § 203]**

20      **(By PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS)**

21       82.    PLAINTIFFS, and the other members of the CALIFORNIA LABOR

22    SUB-CLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1

23    through 81 of this Complaint.

24       83.    Cal. Lab. Code § 200 provides that:

25         As used in this article:

26         (a) "Wages" includes all amounts for labor performed by employees of every

27            description, whether the amount is fixed or ascertained by the standard of time, task,

28            piece, commission basis, or other method of calculation.

1          (b) "Labor" includes labor, work, or service whether rendered or performed under

2          contract, subcontract, partnership, station plan, or other agreement if the labor to be

3          paid for is performed personally by the person demanding payment.

4    84.    Cal. Lab. Code § 202 provides, in relevant part, that:

5          If an employee not having a written contract for a definite period quits his or her

6          employment, his or her wages shall become due and payable not later than 72 hours

7          thereafter, unless the employee has given 72 hours previous notice of his or her

8          intention to quit, in which case the employee is entitled to his or her wages at the

9          time of quitting. Notwithstanding any other provision of law, an employee who quits

10         without providing a 72-hour notice shall be entitled to receive payment by mail if he

11         or she so requests and designates a mailing address. The date of the mailing shall

12         constitute the date of payment for purposes of the requirement to provide payment

13         within 72 hours of the notice of quitting.

14    85.    There was no definite term in any class members' employment contract.

15    86.    Cal. Lab. Code § 203 provides:

16          If an employer willfully fails to pay, without abatement or reduction, in accordance

17         with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is

18         discharged or who quits, the wages of the employee shall continue as a penalty from

19         the due date thereof at the same rate until paid or until an action therefor is

20         commenced; but the wages shall not continue for more than 30 days.

21    87.    Many of the California Class members have terminated their

22 employment and DEFENDANTS have not tendered restitution of wages owed.

23    88.    Therefore, as provided by Cal lab. Code § 203, on behalf of themselves

24 and the members of the  CALIFORNIA LABOR SUBCLASS, PLAINTIFFS demand thirty days of

25 pay as penalty for not paying all wages due at time of termination for all employees who terminated

26 employment during the CALIFORNIA LABOR SUBCLASS and demand an accounting and

27 payment of all wages due, plus interest, plus attorneys fees and interest as allowed by law.

28

1

2

3

### **FOURTH CAUSE OF ACTION**

4

**For Failure to Provide Meal and Rest Periods**

5

**[Cal. Lab. Code §§ 226.7 and 512]**

6

**(By PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS)**

7

89.    PLAINTIFFS, and the other members of the CALIFORNIA LABOR

8

SUBCLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1

9

through 88 of this Complaint.

10

90.    Cal. Lab. Code § 512 provide, in relevant part: "An employer may not employ an

11

employee for a work period of more than five hours per day without providing the

12

employee with a meal period of not less than 30 minutes, except that if the total work

13

period per day of the employee is no more than six hours, the meal period may be

14

waived by mutual consent of both the employer and employee. An employer may not

15

employ an employee for a work period of more than 10 hours per day without

16

providing the employee with a second meal period of not less than 30 minutes,

17

except that if the total hours worked is no more than 12 hours, the second meal

18

period may be waived by mutual consent of the employer and the employee only if

19

the first meal period was not waived.

20

91.    Section 11 of the Order 4-2001 of the Industrial Wage Commission

21

provides, in relevant part:

22

Meal Periods:

23

(A)    No employer shall employ any person for a work period of more than five (5)

24

hours without a meal period of not less than 30 minutes, except that when a

25

work period of not more than six (6) hours will complete the day's work the

26

meal period may be waived by mutual consent of the employer and the

27

employee. Unless the employee is relieved of all duty during a 30 minute

28

meal period, the meal period shall be considered an "on duty" meal period

1    and counted as time worked. An "on duty" meal period shall be permitted

2    only when the nature of the work prevents an employee from being relieved

3    of all duty and when by written agreement between the parties an on-the-job

4    paid meal period is agreed to. The written agreement shall state that the

5    employee may, in writing, revoke the agreement at any time.

6    (B)    If an employer fails to provide an employee a meal period in accordance with

7    the applicable provisions of this order, the employer shall pay the employee

8    one (1) hour of pay at the employee's regular rate of compensation for each

9    workday that the meal period is not provided.

10    92.    Section 12 of the Order 4-2001 of the Industrial Wage Commission

11    provides, in relevant part:

12    Rest Periods:

13    (A)    Every employer shall authorize and permit employees to take rest periods,

14    which insofar as practicable shall be in the middle of each work period. The

15    authorized rest period time shall be based on the total hours worked daily at

16    the rate of ten (10) minutes net rest time per four (4) hours or major fraction

17    thereof.  However, a rest period need not be authorized for employees whose

18    total daily work time is less than three and one-half (3-1/2) hours. Authorized

19    rest period time shall be counted as hours worked for which there shall be no

20    deduction from wages.

21    (B)    If an employer fails to provide an employee a rest period in accordance with

22    the applicable provisions of this order, the employer shall pay the employee

23    one (1) hour of pay at the employee's regular rate of compensation for each

24    workday that the rest period is not provided.

25    93.    In addition, Labor Code Section 558 provides:

26    (a) Any employer or other person acting on behalf of an employer who

27    violates, or causes to be violated, a section of this chapter or any provision regulating

28    hours and days of work in any order of the Industrial Welfare Commission shall be

subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

(b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours and days of work in any order of the Industrial Welfare Commission, the Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.

(c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

94.    Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

95.    DEFENDANTS have intentionally and improperly failed to provide all rest and/or meal periods without any work or duties to PLAINTIFFS and the other members of the CALIFORNIA LABOR SUBCLASS who worked more than three and one half hours (3 ½) per day,

1  and by failing to do so DEFENDANTS violated the provisions of Labor Code 226.7.

2        96.    Therefore, PLAINTIFFS demand on behalf of themselves and

3  the members of the  CALIFORNIA LABOR SUBCLASS, one (1) hour of pay for each workday in

4  which a rest period was not provided for each four (4) hours of work during the period commencing

5  on the date that is within four years prior to the filing of this Complaint and one (1) hour of pay for

6  each five (5) hours of work in which a meal period was not provided.

7

8        **FIFTH CAUSE OF ACTION**

9        **For Failure to Provide Accurate Itemized Statements**

10        **[Cal. Lab. Code § 226]**

11        **(By PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS)**

12        97.    PLAINTIFFS, and the other members of the CALIFORNIA LABOR

13  SUBCLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs

14  1 through 96 of this Complaint.

15        98.    Cal. Labor Code § 226 provides that an employer must furnish

16  employees with an "accurate itemized statement in writing showing:

17      (1) gross wages earned,

18      (2) total hours worked by the employee, except for any employee whose compensation is

19      solely based on a salary and who is exempt from payment of overtime under subdivision (a)

20      of Section 515 or any applicable order of the Industrial Welfare Commission,

21      (3) the number of piecerate units earned and any applicable piece rate if the employee is paid

22      on a piece-rate basis,

23      (4) all deductions, provided that all deductions made on written orders of the employee may

24      be aggregated and shown as one item,

25      (5) net wages earned,

26      (6) the inclusive dates of the period for which the employee is paid,

27      (7) the name of the employee and his or her social security number, except that by January 1,

28      2008, only the last four digits of his or her social security number or an employee

1  identification number other than a social security number may be shown on the itemized

2  statement,

3  (8) the name and address of the legal entity that is the employer, and

4  (9) all applicable hourly rates in effect during the pay period and the corresponding number

5  of hours worked at each hourly rate by the employee."

6  99.   At all times relevant herein, DEFENDANTS violated Labor Code § 226,

7  in that DEFENDANTS failed to properly and accurately itemize the number of hours worked by

8  PLAINTIFFS, and the other members of the  CALIFORNIA LABOR

9  SUBCLASS at the effective regular rates of pay and the effective overtime rates of pay.

10  100.   DEFENDANTS knowingly and intentionally failed to comply with

11  Labor Code § 226, causing damages to PLAINTIFFS, and the other members of the CALIFORNIA

12  LABOR SUB-CLASS.  These damages include, but are not limited to, costs expended calculating

13  the true hours worked and the amount of employment taxes which were not properly paid to state

14  and federal tax authorities.  These damages are difficult to estimate.  Therefore, PLAINTIFFS, and

15  the other members of the  CALIFORNIA LABOR SUB-CLASS elect to recover liquidated damages

16  of $50.00 for the initial pay period in which the violation occurred, and $100.00 for each violation

17  in subsequent pay period pursuant to Labor Code § 226, in an amount according to proof at the time

18  of trial (but in no event more than $4,000.00 for PLAINTIFFS and each respective member of the

19  CALIFORNIA LABOR

20  SUBCLASS herein) plus reasonable attorney's fees and costs pursuant to Labor Code § 226(g).

21

22  **SIXTH CAUSE OF ACTION**

23  **Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA")**

24  **(By PLAINTIFFS and the COLLECTIVE CLASS and Against all Defendants)**

25  101.   PLAINTIFFS, and the other members of the COLLECTIVE CLASS,

26  reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 100

27  of this Complaint.

28  102.   DEFENDANTS are engaged in communication, business, and transmission between

1   the states, and are, therefore, engaged in commerce within the meaning of 29 U.S.C. § 203(b).

2       103.     PLAINTIFFS further bring the Sixth cause of action on behalf of a Collective Class

3   which consists of all members of the CALIFORNIA CLASS who were employed by

4   DEFENDANTS during the period three (3) years prior to the filing of the complaint and ending on

5   the date as determined by the Court (the "COLLECTIVE CLASS"), with documented overtime

6   hours who were classified by DEFENDANTS as exempt, and who performed work in excess of

7   forty (40) hours in one week and did not receive overtime compensation as required by the Fair

8   Labor Standards Act, 29 U.S.C. § 201, *et seq.*

9       104.     29 U.S.C. § 255 provides that a three-year statute of limitations applies

10   to willful violations of the FLSA.

11       105.     29 U.S.C. § 207(a)(1) provides in pertinent part:

12      Except as otherwise provided in this section, no employer shall employ any of his

13      employees who in any workweek is engaged in commerce or in the production of

14      goods for commerce, or is employed in an enterprise engaged in commerce or in the

15      production of goods for commerce, for a workweek longer than forty hours unless

16      such employee receives compensation for his employment in excess of the hours

17      above specified at a rate not less than one and one-half times the regular rate at

18      which he is employed.

19       106.     Section 213(a)(1) of the FLSA provides that the overtime pay

20   requirement does not apply to:

21      any employee employed in a bona fide executive, administrative, or professional

22      capacity (including any employee employed in the capacity of academic

23      administrative personnel or teacher in elementary or secondary schools), or in the

24      capacity of outside salesman (as such terms are defined and delimited from time to

25      time by regulations of the Secretary, subject to the provisions of the Administrative

26      Procedure Act [5 USCS §§ 551 et seq.] except [that] an employee of a retail or

27      service establishment shall not be excluded from the definition of employee

28      employed in a bona fide executive or administrative capacity because of the number

**FIRST AMENDED** COMPLAINT
42

1    of hours in his workweek which he devotes to activities not directly or closely related

2    to the performance of executive or administrative activities, if less than 40 per

3    centum of his hours worked in the workweek are devoted to such activities).

4    107.    DEFENDANTS have willfully engaged in a widespread pattern and practice of

5    violating the provisions of the FLSA, as detailed above, by uniformly designating certain employees

6    as "exempt" employees, by their job title and without regard to DEFENDANTS' realistic

7    expectations and actual overall requirements of the job, including PLAINTIFFS and the other

8    members of the COLLECTIVE CLASS who worked on the production side of the DEFENDANTS'

9    business enterprise.  This was done in an illegal attempt to avoid payment of overtime wages and

10   other benefits in violation of the FLSA and Code of Federal Regulations requirements.

11   108.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.,

12   PLAINTIFFS and the members of the COLLECTIVE CLASS are entitled to compensation for all

13   hours actually worked, including time spent attending meetings, monitoring DEFENDANTS'

14   equipment and waiting for and responding to technical support requests during meal periods, and

15   are also entitled to wages at a rate not less than one and one-half times their regular rate of pay for

16   all hours worked in excess of forty (40) hours in any workweek.

17   109.    29 C.F.R. 541.2 establishes that a job title alone is insufficient to

18   establish the exempt status of an employee. The exempt or nonexempt status of any particular

19   employee must be determined on the basis of whether the employee's salary and duties meet the

20   requirements of the regulations in this part.

21   110.    The exemptions of the FLSA as listed in section 13(a), and as explained

22   by 29 C.F.R. 541.3, do not apply to PLAINTIFFS and the other members of the COLLECTIVE

23   CLASS, because their work consists of non-management, production line labor performed with

24   skills and knowledge acquired from on-the-job training, rather than from the prolonged course of

25   specialized intellectual instruction required for exempt learned professional employees such as

26   medical doctors, architects and archeologists.  PLAINTIFFS either do not hold a bachelor's degree,

27   have not taken any prolonged course of specialization relating to network systems or infrastructure,

28   and/or have attained the vast majority of the skills they use as employees of DEFENDANTS from

on the job training.

111.    For an employee to be exempt as a bona fide "executive," all the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)    The employee's primary duty must be management of the enterprise, or of a customarily recognized department or subdivision;

(b)    The employee must customarily and regularly direct the work of at least two (2) or more other employees;

(c)    The employee must have the authority to hire and fire, or to command particularly serious attention to his or his recommendations on such actions affecting other employees; and,

(d)    The employee must be primarily engaged in duties which meet the test of exemption. No member of the COLLECTIVE CLASS was or is an executive because they all fail to meet the requirements of being an "executive" under section 13 of the FLSA and 29 C.F.R. 541.100. Moreover, none of the members of the COLLECTIVE CLASS were senior or lead computer programmers who managed the work of two or more other programmers in a customarily recognized department or subdivision of the employer, and whose recommendations as to the hiring, firing, advancement, promotion or other change of status of the other programmers were given particular weight and therefore, they do not qualify for the executive exemption as a computer employees under 29 C.F.R. 541.402.

112.    For an employee to be exempt as a bona fide "administrator," all of the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)    The employee must perform office or non-manual work directly related to management or general business operation of the employer or the employer's customers;

(b)    The employee must customarily and regularly exercise discretion and independent judgment with respect to matters of significance; and,

(c)    The employee must regularly and directly assist a proprietor or an exempt administrator; or,

1    (d)    The employee must perform under only general supervision, work requiring special
2           training, experience, or knowledge; and,

3    (e)    The employee must be primarily engaged in duties which meet the test of exemption.
4 No member of the COLLECTIVE CLASS was or is an administrator because they all fail to meet
5 the requirements of for being an "administrator" under section 13(a) of the FLSA and 29 C.F.R.
6 541.300. Moreover, their primary duty does not include work such as planning, scheduling, and
7 coordinating activities required to develop systems to solve complex business, scientific or
8 engineering problems of the employer or the employer's customers and therefore, they are not
9 qualified for the administrative exemption as computer employees under 29 C.F.R. 541.402.

10    113.    For an employee to be "exempt" as a bona fide "professional", the
11 DEFENDANTS have the burden of proving that the primary duty of the employee is the
12 performance of work that:

13    (a)    Requires knowledge of an advanced type in a field of science or learning customarily
14           acquired by a prolonged course of specialized intellectual instruction; or

15    (b)    Requires invention, imagination, originality or talent in a recognized field of artistic
16           or creative endeavor.

17 No member of the COLLECTIVE CLASS was or is a professional because they all fail to meet the
18 requirements of being an "professional" within the meaning of 29 CFR 541.300.

19    114.    For an employee to be "exempt" as a computer software employee,
20 DEFENDANTS have the burden of showing that the primary duty of the employee consists of:

21    (a)    The application of systems analysis techniques and procedures, including consulting
22           with users, to determine hardware, software or system functional specifications;

23    (b)    The design, development, documentation, analysis, creation, testing or modification
24           of computer systems or programs, including prototypes, based on and related to user
25           or system design specifications;

26    (c)    The design, documentation, testing, creation or modification of computer programs
27           related to machine operating systems; or

28    (d)    A combination of the aforementioned duties, the performance of which requires the

1     same level of skills.

2 The "primary duty" of the PLAINTIFFS, and the other members of the COLLECTIVE CLASS, as

3 defined in 29 C.F.R. 541.700, did not consist of the job functions outlined above. Rather, the

4 primary duty of the PLAINTIFFS, and the other members of the COLLECTIVE CLASS, consists of

5 configuring computer software according to specification requested by others. Although the

6 primary duty was highly dependent on and facilitated by the use of computers and computer

7 software programs, the primary duty did not involve:

8       (1)    the determination of hardware, software, or system functional specifications;

9       (2)    the design, development, documentation, analysis, creation, testing, or modification

10              of computer systems or programs; or

11       (3)    a combination of these duties, the performance of which requiring the same level of

12              skills.

13 Rather than consulting with users to determine specifications, PLAINTIFFS primarily engaged in

14 customer service functions by providing repairs and/or basic user support to DEFENDANTS

15 employees. Further, PLAINTIFFS and his team operated under intense scrutiny from management

16 performing the upgrades of hardware and software, limited modifications of hardware and software,

17 troubleshooting, and other non-exempt functions that constituted their primary duties. Thus, no

18 member of the COLLECTIVE CLASS was or is exempt as a computer systems analyst, computer

19 programmer, or software engineer because they all fail to meet the requirements of being a

20 "professional" within the meaning of 29 U.S.C. § 213 and 29 C.F.R. 541.400.

21     115.   During the COLLECTIVE CLASS PERIOD, the PLAINTIFFS, and

22 other members of the COLLECTIVE CLASS, worked more than forty (40) hours in a work week

23 and were also required to perform duties that were primarily for the benefit of the employer during

24 meal periods.

25     116.   At all relevant times, DEFENDANTS failed to pay PLAINTIFFS, and

26 other members of the COLLECTIVE CLASS, overtime compensation for the hours they have

27 worked in excess of the maximum hours permissible by law as required by section 207 of the

28 FLSA, even though PLAINTIFFS, and the other members of the COLLECTIVE CLASS, were

1 │ regularly required to work, and did in fact work, overtime hours.

2 │     117.   At all relevant times, DEFENDANTS failed to pay PLAINTIFFS, and

3 │ other members of the COLLECTIVE CLASS, regular compensation for the hours they have

4 │ worked, performing duties primarily for the benefit of the employer during meal periods.

5 │     118.   For purposes of the Fair Labor Standards Act, the employment practices

6 │ of DEFENDANTS were and are uniform throughout the United States in all respects material to the

7 │ claims asserted in this Complaint.

8 │     119.   There are no other exemptions applicable to PLAINTIFFS and/or to

9 │ members of the COLLECTIVE CLASS.

10 │     120.   As a result of DEFENDANTS' failure to pay overtime and failure to pay

11 │ regular compensation for hours worked during meal periods, as required by the FLSA,

12 │ PLAINTIFFS and the members of the COLLECTIVE CLASS were damaged in an amount to be

13 │ proved at trial.

14 │     121.   Therefore, PLAINTIFFS demand that they and the members of the

15 │ COLLECTIVE CLASS be paid overtime compensation as required by the FLSA for every hour of

16 │ overtime worked in any work week for which they were not compensated, regular compensation for

17 │ every hour worked primarily for the benefit of DEFENDANTS for which they were not

18 │ compensated, plus interest and attorneys' fees as provided by law.

19 │

20 │ **SEVENTH CAUSE OF ACTION**

21 │ **Labor Code Private Attorneys General Act**

22 │ **[Cal. Labor Code § 2698]**

23 │ **(By PLAINTIFFS and the CALIFORNIA CLASS and against All DEFENDANTS)**

24 │     122.   PLAINTIFFS, and the other members of the CLASS, reallege and incorporate by this

25 │ reference, as though fully set forth herein, paragraphs 1 through 121 of this Complaint.

26 │     123.   On December 22, 2008, PLAINTIFFS gave written notice by certified mail to the

27 │ Labor and Workforce Development Agency (the "LWDA") and the employer of the specific

28 │ provisions of this code alleged to have been violated as required by Labor Code § 2699.3.

1  PLAINTIFFS notice to the LWDA complied fully with the requirements of Labor Code § 2699.3

2  and provided notice of the specific provisions of this code alleged to have been violated as well as

3  the facts and theories which support the alleged violation.  DEFENDANTS failed and refused to

4  correct, cure and remedy the identified violations.  On January 20, 2009, PLAINTIFFS received

5  notice that the LWDA does not intend to investigate PLAINTIFF's allegations.  (A true and correct

6  copy of this January 20, 2009 letter from the LWDA is attached hereto as Exhibit # 1).  As a result,

7  pursuant to Section 2699.3, PLAINTIFFS may now commence a civil action pursuant to Section

8  2699 as a matter of right.

9       124.    The policies, acts and practices heretofore described were and are an unlawful

10  business act or practice because DEFENDANTS' failure to pay wages, failure to provide rest and

11  meal period breaks, failure to pay wages and compensation for work without rest and meal period

12  breaks and failure to provide accurate wage statements and maintain accurate time records for

13  PLAINTIFFS and the other members of the CLASS violates applicable Labor Code sections and

14  gives rise to statutory penalties as a result of such conduct, including but not limited to penalties as

15  provided by Labor Code §§ 221, 226, 226.7, 558, 1174 and 1194, applicable Industrial Welfare

16  Commission Wage Orders.  PLAINTIFFS, as an aggrieved employee, hereby seeks recovery of civil

17  penalties as prescribed by the Labor Code Private Attorney General Act of 2004 on behalf of

18  themselves and other current and former employees of DEFENDANTS which comprise the

19  CLASS, against whom one or more of the violations of the Labor Code was committed.  In

20  addition, PLAINTIFFS, as aggrieved employees, hereby seeks recovery of civil penalties as

21  prescribed by the Labor Code Private Attorney General Act of 2004 on behalf of the State of

22  California and/or the LWDA, to the fullest extent available under the law.

23

24                              **PRAYER**

25       WHEREFOR, PLAINTIFF prays for judgment against each Defendant, jointly and severally,

26  as follows:

27  1.     On behalf of the CALIFORNIA CLASS:

28       A)     That the Court certify the First Cause of Action asserted by the CALIFORNIA

1       CLASS as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3);

2   B)  An order temporarily, preliminarily and permanently enjoining and restraining

3       DEFENDANTS from engaging in similar unlawful conduct as set forth herein;

4   C)  An order requiring DEFENDANTS to correctly calculate and pay all wages and all

5       sums unlawfuly withheld from compensation due to PLAINTIFFS and the other

6       members of the CALIFORNIA CLASS; and,

7   D)  Disgorgement of DEFENDANTS' ill-gotten gains into a fluid fund for restitution of

8       the sums incidental to DEFENDANTS' violations due to PLAINTIFFS and to the

9       other members of the CALIFORNIA CLASS according to proof.

10  2.  On behalf of the CALIFORNIA LABOR SUBCLASS:

11  A)  That the Court certify the Second, Third, Fourth, and Fifth Causes of Action asserted

12      by the CALIFORNIA LABOR SUBCLASS as a class action pursuant to Fed. R. Civ.

13      Proc. 23(b)(3);

14  B)  Compensatory damages, according to proof at trial, including compensatory damages

15      for both regular and overtime compensation due PLAINTIFFS and the other

16      members of the CALIFORNIA LABOR SUBCLASS, during the applicable

17      CALIFORNIA CLASS PERIODS plus interest thereon at the statutory rate;

18  C)  One (1) hour of premium pay for each workday in which a rest period was not

19      provided to PLAINTIFFS and each member of the CALIFORNIA LABOR

20      SUBCLASS for each four (4) hours of work during the period commencing on the

21      date that is within four years prior to the filing of this Complaint;

22  D)  One hour of premium pay for each five (5) hours of work in which a meal period was

23      not provided to PLAINTIFFS and each member of the CALIFORNIA LABOR

24      SUBCLASS;

25  E)  The wages of all terminated employee from the CALIFORNIA LABOR SUBCLASS

26      as a penalty from the due date thereof at the same rate until paid or until an action

27      therefor is commenced, for violation of Cal. Lab. Code § 203;

28  F)  The greater of all actual damages or fifty dollars ($50) for the initial pay period in

---

**FIRST AMENDED** COMPLAINT

49

1   which a violation occurs and one hundred dollars ($100) per each member of the

2   CALIFORNIA LABOR SUBCLASS for each violation in a subsequent pay period,

3   not exceeding an aggregate penalty of four thousand dollars ($4,000), and an award

4   of costs and reasonable attorney's fees for violation of Cal. Lab. Code § 226; and,

5   G)   Reimbursement of all necessary expenditures under this section plus interest, which

6   shall accrue from the date on which the employee incurred the necessary expenditure

7   or loss.

8   3.   On behalf of the COLLECTIVE CLASS:

9   A)   That the Court certify the Sixth Cause of Action asserted by the COLLECTIVE

10   CLASS as an opt-in class action under 29 U.S.C. § 216(b);

11   B)   That the Court declare the rights and duties of the parties consistent with the relief

12   sought by PLAINTIFFS;

13   C)   Issue a declaratory judgment that Defendant's acts, policies, practices and procedures

14   complained of herein violated provisions of the Fair Labor Standards Act;

15   D)   That Defendants be enjoined from further violations of the Fair Labor Standards Act;

16   E)   That the PLAINTIFFS and the members of the COLLECTIVE CLASS recover

17   compensatory, damages and an equal amount of liquidated damages as provided

18   under the law and in 29 U.S.C. § 216(b).

19   4.   On all claims:

20   A)   An award of interest, including prejudgment interest at the legal rate.

21   B)   An award of liquidated damages, statutory damages, including reasonable attorneys'

22   fees and cost of suit, but only to the extent that such reasonable attorneys' fees and

23   costs are recoverable pursuant to Cal. Lab. Code §1194 and 29 U.S.C. § 216(b).

24   Neither this prayer nor any other allegation or prayer in this Complaint is to be

25   construed as a request, under any circumstance, that would result in a request for

26   attorneys' fees or costs available under Cal. Lab. Code § 218.5;

27   C)   Such other and further relief as the Court deems just and equitable.

28

1

2    Dated:  February ___, 2008          BLUMENTHAL, NORDREHAUG & BHOWMIK

3                                         By:_____
                                              Norman B. Blumenthal
4                                             Attorneys for Plaintiff

5
                                         UNITED EMPLOYEES LAW GROUP
6                                        Walter Haines, Esq.
                                         65 Pine Ave, #312
7                                        Long Beach, CA 90802
                                         Telephone: (562) 256-1047
8                                        Facsimile: (562) 256-1006

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs demands jury trial on issues triable to a jury.

Dated:   February ___, 2008          BLUMENTHAL, NORDREHAUG & BHOWMIK

By:_____
                    Norman B. Blumenthal
                    Attorneys for Plaintiff


UNITED EMPLOYEES LAW GROUP
Walter Haines, Esq.
65 Pine Ave, # 312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006


G:\D\NBB\Smith v. Kaiser\d-FAC.wpd

---

**FIRST AMENDED** COMPLAINT
52

EXHIBIT _____



# Labor & Workforce Development Agency

January 20, 2009

Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, CA 92037

**Governor**
Arnold
Schwarzenegger

**Acting Secretary**
Douglas Hoffner

Agricultural
Labor
Relations
Board

California
Business
Investment
Services

California
Unemployment
Insurance
Appeals
Board

California
Workforce
Investment
Board

Department of
Industrial
Relations

Economic
Strategy
Panel

Employment
Development
Department

Employment
Training
Panel

Kaiser Foundation Health Plan, Inc. c/o CS Corporation
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833

RE: Employer:     Kaiser Foundation Health Plan, Inc.
RE: Employee(s)   Yvette Smith
RE: LWDA No:      4309

This is to inform you that the Labor and Workforce Development Agency (LWDA) received your notice of alleged Labor Code violations pursuant to Labor Code Section 2699, postmarked December 22, 2008 and after review, does not intend to investigate the allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides that "...civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the LWDA for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code."  Labor Code Section 2699(l) specifies "[T]he superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to this part."

Consequently, you must advise us of the results of the litigation, and forward a copy of the court judgment or the court-approved settlement agreement.  Please be certain to reference the above LWDA assigned Case Number in any future correspondence.

Sincerely,

*Robert A. Jones*

Robert Jones
Deputy Secretary, Special Counsel