1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  YVETTE SMITH, etc., et al.,            )    Case No. 08-CV-2353-LAB (JMA)
                                           )
12                  Plaintiffs,            )    **REPORT AND RECOMMENDATION**
                                           )    **REGARDING MOTION FOR**
13  v.                                     )    **PRELIMINARY APPROVAL OF**
                                           )    **CLASS SETTLEMENT [Doc. 20]**
14  KAISER FOUNDATION HOSPITALS,           )
    INC., etc., et al.,                    )
15                                         )
                    Defendants.            )
16                                         )
                                           )
17  ─────────────────────────────────

18

19         Presently before the Court is a motion for preliminary approval of class

20  settlement filed by Plaintiffs Yvette Smith, Tim Dodson, and Molla Enger ("Plaintiffs"),

21  which was referred to the undersigned by the Honorable Larry Alan Burns for report and

22  recommendation.  Docs. 20, 23.  Defendants Kaiser Foundation Hospitals and Kaiser

23  Foundation Health Plan, Inc. ("Defendants" or "Kaiser") filed a notice of non-opposition.

24  Doc. 22.  For the reasons set forth below, the Court recommends that the District Judge

25  **GRANT** the unopposed motion by issuing an order containing the proposed language

26  attached to this Report and Recommendation.

27  //

28  //

## I.   BACKGROUND

On December 18, 2008, Plaintiff Yvette Smith filed a class-action complaint alleging wage and hour violations against Defendants on behalf of herself and all persons similarly situated.  The complaint alleged violations under the California Labor Code, the Fair Labor Standards Act, and the California Business and Professions Code, as well as claims for civil penalties under the California Labor Code Private Attorneys General Act ("PAGA").  Doc. 1.  Plaintiffs filed a First Amended Complaint, which added Tim Dodson as a named plaintiff, on February 9, 2009.  Doc. 7.  On July 31, 2009, Plaintiff Molla Enger filed a separate wage and hour action against Defendant Kaiser Foundation Health Plan, Inc. entitled Enger v. Kaiser Foundation Health Plan, Inc., Case No. 09-CV-1670-JLS (POR).

According to the pleadings, Plaintiff Smith has been employed by Defendants since July 2004 as a Business Application Coordinator and/or Senior Business Application Coordinator (collectively "SBACs").  Second Am. Compl., ¶¶ 5, 6.  Plaintiff Dodson was employed by Kaiser Foundation Health Plan, Inc. as a SBAC from September 2005 to May 2008.  Id., ¶ 10.  The SBAC positions were described to Smith and other SBACs as exempt, full-time positions.  Id., ¶ 9.  Plaintiff Enger was employed by Kaiser Foundation Health Plan, Inc. as an Analyst, also referred to as a Senior Analyst (collectively "Analyst"), from March 2006 to November 2007.  Id., ¶ 11.  The Analyst position was described to Enger and other Analysts as an exempt, full-time position.  Id., ¶ 12.

Plaintiffs worked on the production side of Defendants' Information Technology staff.  The primary job duties of Plaintiffs and other SBACs and Analysts involved providing training and technical support to hospital staff in connection with Kaiser's HealthConnect computer system, which was installed as part of a procedure called "GoLive."  During the GoLive procedure, Plaintiffs and other team members traveled to Kaiser facilities in Northern California for month-long durations.  Id., ¶ 13.  During these deployments, Plaintiffs worked more than eight (8) hours per day and more than forty

(40) hours per week, and were often unable to take meal or rest breaks.  Plaintiffs also had to deliver training sessions during their lunch periods called "Lunch & Learns."  Id., ¶ 14.  Prior to GoLive, Defendants would require Plaintiffs and their team members to participate in "Technical Dress Rehearsals."  In order to test the equipment without disturbing the hospital staff, these rehearsals took place either during meal periods, early in the morning, or late in the evening, and resulted in work days exceeding eight (8) hours.  Id., ¶ 15.

Plaintiffs Smith and Dodson and other SBACs were also required to remain on-call to handle technical support calls every two (2) months for a period of seven (7) days each.  During these times, SBACs were required to remain on standby for the entire night, every night of the week, for the entire week without additional compensation. While on-call, the SBACs were required to remain within thirty (30) minutes of their work premises in case on-site technical support was needed.  Id., ¶ 16. Plaintiff Enger and other Analysts were similarly required to remain on-call during their employment without additional compensation, and were also required to remain within thirty (30) minutes of their work premises in case on-site technical support was needed.  Id., ¶ 17.

Plaintiffs allege that although they performed non-exempt duties, they were classified by Defendants as exempt from overtime pay and also frequently were not provided with all required meal and rest breaks.  Id., ¶ 26.  Plaintiffs contend that they and other SBACs and Analysts were primarily engaged in work that "falls squarely on the production side of the administrative/production worker dichotomy and should have been properly classified as non-exempt employees."  Id., ¶ 28.

The parties agreed to attend mediation before David A. Rotman at an early stage in the proceedings.  The parties prepared for the mediation by exchanging payroll data, calculating damages, and submitting mediation briefs to Mr. Rotman.  Blumenthal Decl. in Supp. of Mot. for Prelim. Approval of Class Settlement ("Blumenthal Decl."), ¶ 5. Shortly before the mediation, the parties reached a settlement in both actions.  On November 11, 2009, after the Court granted leave to amend, Plaintiffs filed a Second

1   Amended Complaint in this action to add the claims alleged in the <u>Enger</u> lawsuit in order

2   to coordinate the two lawsuits for purposes of settlement.  Doc. 24; Blumenthal Decl., ¶

3   8.

4   **II.    DISCUSSION**

5        Plaintiffs seek to certify a class consisting of two subclasses:  the <u>Smith</u> subclass

6   and the <u>Enger</u> subclass.  Pls.' Mot. at 1.  The <u>Smith</u> subclass consists of:

7        All individuals employed by Kaiser Foundation Hospitals and/or Kaiser
         Foundation Health Plan, Inc. as a Business Application Coordinator II
8        and/or a Senior Business Application Coordinator for the time period
         December 18, 2004 through July 16, 2009.
9
10  <u>Id.</u>; Parties' Stipulation of Settlement and Release Between Plaintiffs and Defendants

11  ("Settlement Agreement"), attached as Exhibit 1 to Blumenthal Decl., ¶ 2.  The <u>Enger</u>

    subclass consists of:
12
13       All individuals employed by Kaiser Foundation Hospitals and/or Kaiser
         Foundation Health Plan, Inc. as an Analyst or Senior Analyst on KP
14       HealthConnect for the time period July 30, 2005 through August 1, 2009.

15  Pls.' Mot. at 1; Settlement Agreement, ¶ 2.

16  **A.    Conditional Class Certification**

17       Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure,[1] the prerequisites

18  to a class action are:

19       (1) the class is so numerous that joinder of all members is impracticable;
         (2) there are questions of law or fact common to the class; (3) the claims
20       or defenses of the representative parties are typical of the claims or
         defenses of the class; and (4) the representative parties will fairly and
21       adequately protect the interests of the class.

22       Fed. R. Civ. P. 23(a).  In addition, plaintiffs must satisfy at least one of the Rule

23  23(b) requirements.

24       **1.    Numerosity**

25       According to Plaintiffs, the <u>Smith</u> and <u>Enger</u> subclasses (hereinafter "Settlement

26  Class Members", as defined in the Settlement Agreement, ¶ 2) are composed of over

27  500 individuals.  Pls.' Mot. at 18.  Defendants do not contest this.  This number is

28  ─────────────
         [1]All "Rule" references herein refer to the Federal Rules of Civil Procedure.

1   sufficient to make joinder impracticable.  Indeed, courts have certified classes with far

2   fewer members.  See Immigrant Assistance Project of Los Angeles County Fed'n of

3   Labor (AFL-CIO) v. Immigration and Naturalization Serv., 306 F.3d 842, 869 (9th Cir.

4   2002) (observing that courts have certified classes with fewer than 100 members).  The

5   Court finds that the number of Settlement Class Members satisfies the numerosity

6   requirement.

7         **2.   Commonality**

8         A class has sufficient commonality if "there are questions of fact and law

9   common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) has been construed

10  permissively.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  That is,

11  all questions of fact and law need not be common in order to satisfy the rule.  Id.  "The

12  existence of shared legal issues with divergent factual predicates is sufficient, as is a

13  common core of salient facts coupled with disparate legal remedies within the class."

14  Id.

15        Here, Plaintiffs contend that commonality exists because the core question of

16  whether the SBAC and Analyst employees were properly classified as "exempt"

17  employees is common to the class.  Pls.' Mot. at 19.  Defendants have stipulated to a

18  finding of commonality for purposes of settlement.  Id.; Settlement Agreement, ¶ 4.c.

19  The Court finds the commonality requirement has been established by Plaintiffs.

20        **3.   Typicality**

21        The typicality requirement of Rule 23(a) requires that the named plaintiffs' claims

22  be "reasonably co-extensive" with the absent class members' claims, even if the claims

23  are not "substantially identical."  Hanlon, 150 F.3d at 1020.  The purpose of this

24  requirement is to ensure that the interests of the named representatives align with the

25  interests of the class.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

26  "The test of typicality 'is whether other members have the same or similar injury,

27  whether the action is based on conduct which is not unique to the named plaintiffs, and

28  whether other class members have been injured by the same course of conduct.'"  Id.

1   (citing Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

2          Here, as Plaintiffs contend, the typicality requirement is met because Plaintiffs,

3   like every other Settlement Class Member, were employed by Defendants and were

4   classified as "exempt" employees.  Plaintiffs, like the other class members, claim unpaid

5   overtime wages for work performed in the same job classifications.  The claims of both

6   the named plaintiffs and the other class members arise from the same course of

7   conduct by Defendants, involve the same work performed in connection with Kaiser's

8   HealthConnect computer system, and are based upon the same legal theories.  See

9   Pls.' Mot. at 19.  Defendants have stipulated for purposes of settlement that typicality

10  has been established.  Id. at 20; Settlement Agreement, ¶ 4.d.  Accordingly, the Court

11  finds that Plaintiffs' claims are typical of the class claims.

12         **4.     Adequate Representation**

13         "Absent class members must be afforded adequate representation before entry

14  of a judgment which binds them."  Hanlon, 150 F.3d at 1020 (citation omitted).  The

15  Ninth Circuit applies a two-pronged test to determine adequate representation.  First,

16  the Court must consider whether the named plaintiffs will prosecute the action

17  vigorously on behalf of the class through qualified counsel.  The second consideration is

18  whether the named plaintiffs have any conflicts of interest with other class members.

19  Id.; see also Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

20         The Court is satisfied that the named plaintiffs, Yvette Smith, Tim Dodson, and

21  Molla Enger, have and will fairly and adequately protect the interests of the class, as

22  required under Rule 23(a)(4), and do not have any conflicts of interest with the absent

23  class members, and accordingly finds that they are suitable class representatives.

24  Defendants do not contest the suitability of the named plaintiffs as class

25  representatives.  Additionally, after reviewing the qualifications of the applicants for

26  appointment of class counsel, Blumenthal, Nordrehaug & Bhowmik and the United

27  Employees Law Group, the Court finds that counsel satisfy the adequacy requirements

28  of Rule 23(g)(1) and (4).  Defendants have not opposed the qualifications of Plaintiffs'

1   counsel.

2   **5.      Rule 23(b)(3)**

3   Because all four Rule 23(a) requirements are satisfied, the Court turns to Rule

4   23(b).  Again, plaintiffs must satisfy at least one of the Rule 23(b) requirements.  Here,

5   the parties have stipulated, for purposes of settlement, and pursuant to Rule 23(b)(3),

6   that class certification is appropriate on the basis that "the questions of law or fact

7   common to class members predominate over any questions affecting only individual

8   members, and that a class action is superior to other available methods for fairly and

9   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Settlement

10  Agreement, ¶ 4.g.; Pls.' Mot. at 17.

11  **a.      Predominance**

12  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

13  sufficiently cohesive to warrant adjudication by representation."  Hanlon, 150 F.3d at

14  1022 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)).  Because this

15  analysis presumes that commonality has already been established pursuant to Rule

16  23(a)(2), the presence of commonality alone is not sufficient to demonstrate

17  predominance.  Hanlon, 150 F.3d at 1022.  In contrast to Rule 23(a)(2), the

18  predominance requirement of Rule 23(b)(3) centers on the relationship between the

19  common and individual issues.  Id.  "When common questions present a significant

20  aspect of the case and they can be resolved for all members of the class in a single

21  adjudication, there is clear justification for handling the dispute on a representative

22  rather than on an individual basis."  Id. (citing 7A Charles Alan Wright, Arthur R. Miller &

23  Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

24  Here, all Settlement Class Members were classified in one of two job positions,

25  SBAC or Analyst, and each was classified and treated as an exempt employee.

26  Defendants do not dispute Plaintiffs' contention that Kaiser engaged in a "uniform

27  course of conduct" with respect to the class, such that any liability could be established

28  on a class-wide basis.  Pls.' Mot. at 21.  Individual issues, such as the number of hours

of unpaid overtime allegedly due each class member and the rate of pay for each

employee, are easily resolved using straightforward calculations.  Other courts presiding

over overtime pay litigation have found that common questions of law and fact

predominate over individual issues.  See, e.g., Breeden v. Benchmark Lending Group,

Inc., 229 F.R.D. 623, 630 (N.D. Cal. 2005).  The Court finds that common questions of

law and fact predominate over individual questions in this action.

### b.   Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether

the objectives of the particular class action procedure will be achieved in the particular

case."  Hanlon, 150 F.3d at 1023 (citing Wright, Miller & Kane, Federal Practice &

Procedure § 1779).  Such a determination entails "a comparative evaluation of

alternative mechanisms of dispute resolution."  Hanlon, 150 F.3d at 1023.

Here, if the approximately 500 class members each pursued their claims on an

individual basis, the cases would burden the judiciary and the litigation costs would

likely outweigh the relatively small amount at stake for each class member.  "Class

actions . . . may permit the plaintiffs to pool claims which would be uneconomical to

litigate individually."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985).  The

Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

In sum, the Court recommends that the District Judge conditionally **CERTIFY** the

class for the purpose of settlement.

**B.   The Proposed Settlement**

Defendants have agreed to pay a sum equal to no more than $2,910,000 (Gross

Fund Value) to fund the settlement of this action.  Prior to distribution to class members,

the Gross Fund Value will be used to pay: (I) Attorneys' fees and costs; (ii) PAGA

payments; (iii) Enhancement awards to each of the named plaintiffs; and (iv) Claims

administration costs.  Blumenthal Decl., ¶ 12 & Settlement Agreement, ¶¶ 9, 10, 12.

The balance of the Gross Fund Value will constitute the Net Fund Value ("NFV").

Settlement Agreement, ¶ 10.  The NFV for the "Settlement Class," defined as all class

members who do not opt out of the Settlement Agreement, is the fund from which members of the Settlement Class will be paid on a claims-made basis. Id., ¶¶ 2, 10; Pls.' Mot. at 2.

The parties agree that Class Counsel, Blumenthal, Nordrehaug & Bhowmik and the United Employees Law Group, shall be awarded a sum not to exceed twenty-five percent (25%) of the Gross Fund Value. Id., ¶¶ 4.e. & 12.a. The parties also agree that Class Counsel will apply to the Court for a separate award of costs. Id., ¶ 12.a. Should the Court approve a lesser percentage or amount of fees and/or costs, the unapproved portion(s) shall revert to the NFV to be distributed to the Settlement Class. Id. The parties additionally agree that $20,000 shall be paid in accordance with Cal. Labor Code § 2698 et seq., $15,000 of which shall be paid to the Labor and Workforce Development Agency as the sum allocable as the PAGA payment and $5,000 of which shall be paid to the NFV. Id. The parties further agree that the named plaintiffs shall each apply to the court for enhancement awards in the amounts of $25,000 for Plaintiff Smith, $25,000 for Plaintiff Dodson, and $20,000 for Plaintiff Enger in consideration for serving as the class representatives. Id., ¶ 12.b. The enhancement awards are in addition to the claim share to which Plaintiffs are each entitled. Id. Should the Court approve lesser enhancement awards, the unapproved portion(s) shall revert to the NFV. Id. Gilardi and Company LLC, the Claims Administrator selected by the parties, has agreed to perform all claims administration duties for a fee estimated to be $30,000. Id., ¶ 12.f.

Each member of the Settlement Class who returns a valid and timely Claim Form ("Qualified Claimant") shall receive a share of the NFV. Id., ¶ 12.c. Each Qualified Claimant's allocation of the NFV will be determined by dividing the NFV by the total number of workweeks in the two subclasses and multiplying that figure by the Qualified Claimant's individual workweek total. Workweeks will be calculated by dividing the number of payroll work hours a class member recorded in a covered position during the applicable class period(s), dividing that number by 40, and rounding to the nearest integer. Id. Of the amount to be paid to Qualified Claimants, fifty percent (50%) is

allocated to wages, and fifty percent (50%) is allocated to penalties and interest.  Id., ¶ 12.g.

The settlement is to be made on a non-reversionary basis, except as to employer taxes.  Id., ¶ 9.  Specifically, to the extent that Settlement Class Members do not submit a claim for their pro rata share of the NFV (e.g., if they opt out or do not submit a valid claim form), that portion of the NFV shall not revert to Defendants but rather shall first be used to pay any employer-side payroll taxes owed on claims, with the balance then being redistributed to Qualified Claimants on a proportional basis.  Id., ¶ 12.d.  Defendants shall be responsible for any additional employer taxes in excess of the unclaimed portion of the NFV.  Id., ¶¶ 12.d. & 12.g.  To the extent that the Court approves a lesser percentage or amount of attorneys' fees, costs, and enhancement awards, the unapproved portion or portions shall revert to the NFV and will be distributed to Qualified Claimants.  Id., ¶¶ 12.a. & 12.b.

Defendants agree to deposit the first $30,000 into an account, through the Claims Administrator, within fifteen (15) business days of preliminary approval for the sole purpose of paying the Claims Administrator's invoices as approved by the Court. Id., ¶ 12.d.  The remainder of the Gross Fund Value will be deposited into the same account within ten (10) business days of final approval by the Court.  Id.  Any interest accrued on the account will be distributed to class claimants, unless final approval is reversed on appeal, in which case Defendants will be entitled to prompt return of the principal and all interest accrued.  Id.

**C.   Preliminary Approval of the Settlement**

   **1.   Legal Standard**

Under Rule 23(e), the Court may approve a class settlement only upon finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To determine whether a proposed settlement meets these standards, the Court must evaluate a number of factors, including:

   (1)   the strength of the plaintiffs' case;

08cv2353

(2)     the risk, expense, complexity, and likely duration of further litigation;

(3)     the risk of maintaining class action status throughout the trial;

(4)     the amount offered in settlement;

(5)     the extent of discovery completed and the stage of the proceedings;

(6)     the experience and views of counsel;

(7)     the presence of a governmental participant; and

(8)     the reaction of the class members to the proposed settlement.

Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted).  These factors are not exclusive, and in some circumstances, one factor may deserve more weight than others or alone may even prove to be determinative.  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982); Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  In addition, the settlement may not be the product of collusion among the negotiating parties.  Ficalora v. Lockheed California Co., 751 F.2d 995, 997 (9th Cir. 1985); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

Given that some of these factors cannot be fully assessed until the Court conducts the Final Approval Hearing, a full fairness analysis is unnecessary at this stage.  Singer v. Becton Dickinson and Co., 2009 WL 4809646, at *7 (S.D. Cal. 2009) (citation and quotations omitted).  "Rather, at the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible range of possible judicial approval and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate."  Id. (citations and quotations omitted).

**2.     Analysis**

**a.      The Strength of the Plaintiffs' Case**

The primary contention set forth by Plaintiffs is that Defendants violated the California Labor Code, Fair Labor Standards Act ("FLSA"), and California Business and Professions Code by failing to pay SBACs and Analysts overtime pay for work in excess

08cv2353

1   of forty (40) hours per week.  Defendants deny "any and all liability or wrongdoing of any

2   kind associated with the claims alleged" in the Second Amended Complaint, and deny,

3   except for settlement purposes, that the claims asserted are suitable for class

4   treatment.  Pls.' Mot. at 9-10; Blumenthal Decl., ¶ 9.

5          Both the California Labor Code and the FLSA contains various exemptions from

6   their requirements that employers pay their employees time and a half for work in

7   excess of forty (40) hours per week, including the "administrative exemption."  Cal.

8   Labor Code §§ 510, 515; In re Farmers Ins. Exch., Claims Representatives' Overtime

9   Pay Litig., 481 F.3d 1119, 1127 (9th Cir. 2007) (citing 29 U.S.C. § 213(a)(1)).  Here, one

10  of the defenses to the claims alleged was that many class members were barred from

11  recovery by this exemption.  Pls.' Mot. at 13-14.  Plaintiffs characterize this as a "serious

12  threat[]" to their claims, and note that other courts have found computer employees

13  exempt from overtime pay.  Id. at 13.  In Koppinger v. American Interiors, Inc., 295 F.

14  Supp. 2d 797 (N.D. Ohio 2003), for example, the court found that an information

15  technology employee who was responsible for "maintaining, upgrading, and

16  administrating" his employer's computer system fell within the FLSA's administrative

17  exemption.  Koppinger, 295 F. Supp. 2d at 802, 806; see also Bagwell v. Florida

18  Broadband, LLC, 385 F. Supp. 2d 1316, 1329 (S.D. Fla. 2005) (finding that a network

19  operation engineer fell under both the administrative and computer professional

20  exemptions to the FLSA).

21          Plaintiffs also observe that if these cases had not settled, Defendants would

22  have argued, in opposing class certification, that individual issues predominated

23  because the applicability of the administrative exemption would have had to have been

24  individually determined for each class member.  Pls.' Mot. at 14.  Plaintiffs posit that

25  there was a "significant risk" that they would not have been able to obtain class

26  certification.  Id.

27          Given the above uncertainties, this factor weighs in favor of granting preliminary

28  approval of the settlement.

1

2

### b.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation

3     "In most situations, unless the settlement is clearly inadequate, its acceptance

4  and approval are preferable to lengthy and expensive litigation with uncertain results."

5  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526 (citing 4 A. Conte & H. Newberg,

6  Newberg on Class Actions, § 11.50 at 155 (4th ed. 2002)).

7     Here, the parties have indicated a clear intention and desire to resolve this matter

8  and clearly, continued litigation would have proved expensive for both sides.  The

9  parties acknowledge that litigating and trying this action may have led to possible

10  appeals.  Blumenthal Decl., ¶ 21.  This factor weighs in favor of preliminary approval.

11

12

### c.     The Risk of Maintaining Class Action Status Throughout the Trial

13     Plaintiffs acknowledge that "class certification in this action would have been

14  hotly disputed and was by no means a foregone conclusion."  Pls.' Mot. at 14.  This

15  factor weighs in favor of preliminary approval of the settlement.

16

### d.     The Amount Offered in Settlement

17     When analyzing the amount offered in settlement, the Court should examine "the

18  complete package taken as a whole, rather than the individual component parts" to

19  determine whether the proposal is fair.  Officers for Justice, 688 F.2d at 628.  "[I]t is

20  well-settled law that a proposed settlement may be acceptable even though it amounts

21  to only a fraction of the potential recovery that might be available to class members at

22  trial."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 527 (citing Linney v. Cellular Alaska

23  P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998)).  "[T]he very essence of a settlement is

24  compromise."  Linney, 151 F.3d at 1242 (citation omitted).

25     Here, Plaintiffs' damage expert, DM&A, reviewed payroll and time recording data

26  and calculated the total potential class damages as $6,464,159.97.  DM&A reached this

27  amount by assuming that each SBAC employee was not paid for three (3) overtime

28  hours for each week worked during the Class Period, plus one missed meal break and

1   one missed rest break per workweek.  This resulted in compensation owed in the

2   amount of $6,054,159.97.  Blumenthal Decl., ¶ 6.  DM&A performed a similar calculation

3   for Analyst employees, which resulted in a net calculation of $410,000 in compensation

4   owed.  Id.

5        The gross settlement amount, or Gross Fund Value, of $2,910,000 represents

6   45% of the total maximum damages calculated by Plaintiffs.  After payment of attorneys'

7   fees (25% of Gross Fund Value) and costs, PAGA payments ($20,000 total, $15,000 of

8   which shall be paid to the Labor and Workforce Development Agency and $5,000 of

9   which shall be paid to the NFV), enhancement awards ($70,000), and claim

10  administration costs ($30,000), all of which are subject to final court approval, the net

11  settlement amount, or NFV, will be approximately $2,067,500, nearly 32% of full

12  recovery.  Again, the settlement amount is non-reversionary, as described above.

13       A settlement of this amount falls within the range of similar settlements in the

14  Ninth Circuit.  For instance, in Glass v. UBS Financial Services, Inc., 2007 WL 221862

15  (N.D. Cal. 2007), the court found that settlement of a wage and hour class action for 25

16  to 35% of the amount of damages plaintiffs could have proven at trial to be reasonable.

17  Glass, 2007 WL 221862, at *4.  In Singer, this district court found a proposed settlement

18  fund providing 28% of the claimed losses to be adequate at the preliminary approval

19  stage.  Singer, 2009 WL 4809646, at *7-8.

20       The Court accordingly concludes that this factor weighs in favor of preliminary

21  approval.

22      **e.**    **The Extent of Discovery Completed and the Stage of the**
             **Proceedings**

23

24       The proposed settlement in this case was reached at an early stage in the

25  proceedings; thus, no formal discovery took place prior to settlement.  Rather,

26  Defendants, in preparation for attending mediation, informally provided Plaintiffs with

27  time records and payroll information for members of the class.  Pls.' Mot. at 10.

28  Plaintiffs, with the assistance of their damages expert, analyzed the data, which

1   included information concerning the weeks worked by the class and salary information

2   for the positions at issue, and calculated damages.  Id.; Blumenthal Decl., ¶¶  5, 11.

3   Shortly before the mediation was to occur, the parties entered into direct settlement

4   negotiations, and subsequently reached an agreement.  Pls.' Mot. at 10.  Plaintiffs'

5   counsel also state that prior to filing the Smith action, they conducted a "thorough

6   investigation" into the facts, and that "the agreement to settle did not occur until Class

7   Counsel possessed sufficient information to make an informed judgment regarding the

8   likelihood of success on the merits and the results that could be obtained through

9   further litigation."  Id. at 16; see also Blumenthal Decl., ¶ 11.

10          In Glass, the court granted final approval of a class wage and hour settlement

11   notwithstanding the fact that no formal discovery had taken place.  Glass, 2007 WL

12   221862, at *4.  The court noted that "[i]n the context of class action settlements, 'formal

13   discovery is not a necessary ticket to the bargaining table' where the parties have

14   sufficient information to make an informed decision about settlement."  Id. (citing In re

15   Mego Fin. Corp., 213 F.3d at 459); see also Linney, 151 F.3d at 1239.  Here, Plaintiffs

16   have adequately demonstrated that the agreement to settle did not occur until Class

17   Counsel possessed sufficient information to evaluate the case and make an informed

18   decision about settlement.  Accordingly, the Court finds that this factor supports

19   preliminary approval of the settlement.

20                    **f.      The Experience and Views of Counsel**

21          Both Class Counsel and Defendants' counsel are of the opinion that the

22   settlement is fair, reasonable, and adequate and is in the best interests of the class.

23   Pls.' Mot. at 10; Blumenthal Decl., ¶ 26.  The settlement was negotiated and approved

24   by experienced counsel on both sides of the litigation.  Accordingly, this factor weighs in

25   favor of preliminary approval.

26                    **g.      The Presence of a Governmental Participant**

27          This factor does not weigh in the Court's analysis as there is no governmental

28   participant in this action.

        **h.**     **The Reaction of the Class Members to the Proposed Settlement**

      The reaction of the class members to the proposed settlement cannot be evaluated at this time.  This factor will be appropriate for consideration at the hearing for final approval of the settlement

          **i.**     **Conclusion**

      At this preliminary approval stage, the Court finds the proposed settlement is fair, reasonable, and adequate.  There is no evidence suggesting collusion.  The Court accordingly recommends that the District Judge **GRANT** preliminary approval of the settlement.

**D.**    **Class Notice**

      "The class notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" <u>Singer</u>, 2009 WL 4809646, at *10 (citing <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 315 (1950)).  For any class certified under Rule 23(b)(3), the class notice must satisfy the requirements of Rule 23(c)(2)(B), which provides:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
>     (i)     the nature of the action;
>
>     (ii)    the definition of the class certified;
>
>     (iii)   the class claims, issues, or defenses;
>
>     (iv)   that a class member may enter an appearance through an attorney if the member so desires;
>
>     (v)    that the court will exclude from the class any member who requests exclusion;
>
>     (vi)   the time and manner for requesting exclusion; and
>
>     (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

### 1.    Content of the Notice

The Court has reviewed the Proposed Notice and finds that the content adequately meets the requirements set forth in Rule 23(c)(2)(B).  The Court has also reviewed the Proposed Claim Form and Proposed Request for Exclusion from Class Action Settlement, which will be mailed with the Proposed Notice, and finds them to be adequate.  See Proposed Notice, Proposed Claim Form, and Proposed Request for Exclusion from Class Action Settlement, attached to Settlement Agreement as Exs. A-C (hereinafter collectively "Notice Packet").

### 2.    Method of Notice

The method of notice proposed by the parties is reasonable.  The parties propose that within twenty (20) days of the entry of the order granting preliminary approval of the settlement, the Claims Administrator will mail an individual Notice Packet to each Settlement Class Member via first-class regular U.S. mail using the most current mailing address available from Defendants' records.  Pls.' Mot. at 22, 23; Settlement Agreement, ¶ 14.  Prior to mailing the Notice Packets, the Claims Administrator will perform address updates and verifications.  Settlement Agreement, ¶ 13.  The Claims Administrator will mail a follow-up notice to those Settlement Class Members who have not responded twenty (20) days before the expiration of the claims period to encourage class members to respond.  Pls.' Mot. at 23; Settlement Agreement, ¶ 15.  Ten (10) days before the expiration of the claims period, the Claims Administrator will also place a reminder telephone call to class members who have not responded.  Pls.' Mot. at 23; Settlement Agreement, ¶ 15.  The Claims Administrator will also will perform one "skip trace" on any returned mail and will re-mail the Notice Packet to an updated address within ten (10) days of receiving notice that a Notice Packet was undeliverable.  Pls.' Mot. at 23; Settlement Agreement, ¶ 15.

The Notice instructs Settlement Class Members who wish to participate in the settlement to complete, sign, and return the Claim Form to the Claims Administrator.

Proposed Notice, Section VIII. A.  The Claim Forms must be postmarked within forty-five (45) days from the date the Notice Packets are mailed.  Settlement Agreement, ¶ 15.  If any class member disagrees with the number of workweeks and/or rate of pay set forth on the Claim Form, they must complete Section 2. B. of their Claim Form accordingly and send documentation supporting their position.  See Proposed Claim Form, Section 2.

Any class members who wish to opt-out of the settlement must complete, sign, and return the Request for Exclusion from Class Action Settlement Form to the Claims Administrator within forty-five (45) days of the mailing date of the Notice Packet.  See Pls.' Mot. at 24; Proposed Notice, Section VIII. B.  Additionally, any objections to the proposed settlement must be filed with the Court and served upon all counsel of record by no later than forty-five (45) days from the mailing of the notice.  See Pls.' Mot. at 23; Proposed Notice, Section VIII. C.

Finally, the Claims Administrator is required to send a deficiency notice within five (5) days to any class member who returns a claim form containing any deficiencies or irregularities.  Settlement Agreement, ¶ 16.  The deficiency notice will provide the class member with no more than fifteen (15) days from the mailing of the deficiency notice to postmark a written response to cure the deficiencies.  Id.

Because the content and method of notice is the best notice that is practicable under the circumstances, the Court recommends that the District Judge **APPROVE** the proposed notice.

III.   **CONCLUSION**

For the foregoing reasons, the Court recommends that the District Judge **GRANT** the unopposed motion for preliminary approval of class settlement by signing an order with the attached proposed text, and (1) conditionally certify the class for the purpose of settlement; (2) grant preliminary approval of the settlement; and (3) approve the proposed notice.

This report and recommendation will be submitted to the Honorable Larry Alan

Burns, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

Any party may file written objections with the Court and serve a copy on all parties on or

before **February 19, 2010**.  The document should be captioned "Objections to Report

and Recommendation."  Any reply to the Objections shall be served and filed on or

before **March 5, 2010**.  The parties are advised that failure to file objections within the

specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>,

951 F.2d 1153 (9th Cir. 1991).

   **IT IS SO ORDERED.**

DATED:  February 4, 2010

Jan M. Adler
U.S. Magistrate Judge

19

**PROPOSED TEXT FOR ORDER GRANTING PRELIMINARY APPROVAL
OF CLASS ACTION**

On November 10, 2009, the Honorable Larry A. Burns, United States District Judge, signed an order referring Plaintiffs' motion for preliminary approval of class settlement to the Honorable Jan M. Adler, United States Magistrate Judge, on a Report and Recommendation basis.

This Court has considered the Report and Recommendation, the Parties' Stipulation of Settlement and Release Between Plaintiffs and Defendants ("Settlement Agreement") and its exhibits, Plaintiffs' unopposed motion for preliminary approval of class settlement, and all other papers filed in this action.  The matter having been submitted and good cause appearing, the Court finds as follows:

1.    This Order incorporates by reference the definitions in the Settlement Agreement, attached as Exhibit 1 to Blumenthal Decl. in Supp. of Mot. for Prelim. Approval of Class Settlement [Doc. 20-2].

2.    The parties have agreed to and the Court conditionally certifies the following classes for the purpose of settlement:

>      All individuals employed by Kaiser Foundation Hospitals and/or Kaiser Foundation Health Plan, Inc. as a Business Application Coordinator II and/or a Senior Business Application Coordinator for the time period December 18, 2004 through July 16, 2009.

>      All individuals employed by Kaiser Foundation Hospitals and/or Kaiser Foundation Health Plan, Inc. as an Analyst or Senior Analyst on KP HealthConnect for the time period July 30, 2005 through August 1, 2009.

3.    The Court is satisfied that the named plaintiffs, Yvette Smith, Tim Dodson, and Molla Enger, have and will fairly and adequately protect the interests of the class, as required under Rule 23(a)(4), and do not have any conflicts of interest with the absent class members, and accordingly finds that they are suitable class representatives.

4.    After reviewing the qualifications of the applicants for appointment of class counsel, Blumenthal, Nordrehaug & Bhowmik and the United Employees Law Group, the Court finds that counsel satisfy the adequacy requirements of Rule 23(g)(1) and (4).  The firms of Blumenthal, Nordrehaug & Bhowmik and the United Employees Law Group are accordingly **APPOINTED** as Class Counsel.

5.    At this preliminary approval stage, the Court finds the proposed settlement is fair, reasonable, and adequate, and within the range of possible approval.  The Court **GRANTS** preliminary approval of the settlement.

6.    The Court **APPOINTS** Gilardi and Company LLC as Claims Administrator.

7.    The content and method of notice specified in the Settlement Agreement (see ¶¶ 13-16 & Exs. A-C) is the best notice that is practicable under the circumstances, and complies with the requirements of Rule 23(c)(2)(B).

The Court **GRANTS** approval of the proposed class notice.  Notice of the proposed settlement shall be provided in the manner described in paragraphs 13 and 14 of the Settlement Agreement.  Such notice shall be substantially in the same form of Exhibit A to the Settlement Agreement. Non-substantive changes may be made to the Notice by agreement of the parties without further order of this Court.

8.   No later than _____, 2010, the Claims Administrator shall file with the Court an affidavit listing, by name and current city of residence, all persons who have effectively excluded themselves from the Settlement Class.

9.   A hearing ("Fairness Hearing") is calendared for _____, 2010 at _____ in the United States Courthouse, 940 Front Street, Courtroom 9, San Diego, CA 92101, the Honorable Larry A. Burns presiding, to hear objections and determine:

a.   whether the Settlement should be approved by the Court as fair, reasonable, and adequate;

b.   whether the Final Judgment should be entered approving the Settlement, dismissing the Action, on the merits and with prejudice, and to determine whether the releases of claims, as set forth in the Settlement Agreement, should be approved;

c.   the amount of attorneys' fees and expenses to be paid to Class Counsel;

d.   the amount of enhancement awards, if any, to be paid to the class representatives; and

e.   such other matters as the Court may deem appropriate.

10.   Any interested person who timely and properly objects to the settlement, Class Counsel's application for attorneys' fees and costs, and/or the class representatives' applications for enhancement awards, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Fairness Hearing and present evidence or argument that may be proper or relevant; provided, however, that no person shall be heard or entitled to contest the approval of the terms and conditions of the proposed settlement or the fees, costs, and enhancements requested by Class Counsel, unless that person has (i) sent or delivered written objections and copies of any supporting papers and briefs so that they are received no later than _____, 2010, upon counsel below:

> Norman B. Blumenthal
> Kyle R. Nordrehaug
> Aparajit Bhowmik
> Blumenthal, Nordrehaug & Bhowmik
> 2255 Calle Clara
> La Jolla, CA 92037
> Fax: (858) 551-1232
> **Counsel for Plaintiffs**

08cv2353

Walter Haines
United Employees Law Group
65 Pine Avenue, Suite 312
Long Beach, CA 90802
Fax: (562) 256-1006
**Counsel for Plaintiffs**

Thomas R. Kaufman
Lorraine H. O'Hara
Mariana Aguilar
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
Fax: (310) 201-5219
**Counsel for Defendants**

and (ii) filed said objections, papers, and briefs, showing due proof of service upon said counsel with the Clerk of the United States District Court for the Southern District of California, 880 Front Street, Suite 4290, San Diego, CA 92101, on or before the same date.  Any class member who does not submit an objection in the manner provided above shall be deemed to have waived any objection to the settlement and shall forever be foreclosed from making any objection to class certification, to the fairness, adequacy, or reasonableness of the settlement, and to any attorneys' fees and costs or enhancement awards approved.

11.     Any person who wishes to appear at the Fairness Hearing, either in person or through counsel, in addition to providing the information required in paragraph 9, shall also (i) identify the points the objector wishes to speak about at the hearing; (ii) enclose copies of any documents the objector intends to rely on at the hearing; (iii) state the amount of time the objector requests for speaking at the hearing; and (iv) state whether the objector intends to have a lawyer speak on his or her behalf.  Any lawyer who intends to speak on behalf of an objector at the Fairness Hearing shall enter a written notice of appearance of counsel with the Clerk of the Court no later than _____, 2010.  All properly submitted objections shall be considered by the Court.

12.     All papers filed in support of the final approval of the settlement and Class Counsel's request for approval of attorneys' fees, costs, and enhancement awards shall be filed on or before _____, 2010.

13.     The Court expressly reserves its right to adjourn the Fairness Hearing from time to time without further notice other than to counsel of record and to approve the proposed settlement and request for approval of attorneys' fees and expenses at or after the originally scheduled Fairness Hearing.

//
//
//
//

22

14.    The Court retains exclusive jurisdiction over the action to consider all further matters arising out of or connected with the proposed settlement.

**IT IS SO ORDERED**.

DATED: _____

_____
Honorable Larry Alan Burns
United States District Judge

08cv2353